Hillery C. THORNE, Jr.,
Petitioner–Appellant,

v.

Robert BAILEY, Sheriff; Alfred E. Ferguson, Judge; Lawrence Egnor, Judge, Respondents–Appellees.

No. 86–7697.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 6, 1988.

Decided May 5, 1988.

Rehearing and Rehearing In Banc
Denied July 19, 1988.

Christopher Lee Varner, New York City, for petitioner-appellant.

Jill Leone Miles, Asst. Atty. Gen., for respondents-appellees.

Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

Hillery C. Thorne, Jr., appeals the district court's order denying his *pro se* habeas corpus petition. The court rejected, *inter alia*, Thorne's claims that his misdemeanor conviction under W.Va.Code § 61–8–16(a)(4) (1984)[1] violated his First Amendment rights. The court held that conduct, not speech, was criminalized by the statute and since his conviction was based on his actions, not his words, the statute is neither unconstitutionally vague nor overbroad. The court also held the statute constitutional as applied to Thorne. We affirm.

## I

Thorne was a student at Marshall University ("University") intermittently from 1977 through 1983. Throughout much of this period, Thorne had encountered various difficulties at the University, culminating in a civil rights suit against the University and its officials for denying him access to the campus or library as a result of his protests against apartheid policies in South Africa. That case resulted in a monetary settlement and a consent decree ordering that Thorne be treated fairly by the University in the future.[2]

By January 1983, Thorne was in academic trouble and had developed a record of disciplinary violations. Following a disruptive incident in the office of an administrator, a hearing was held to determine if Thorne should be banned from campus. Although Thorne was notified of his suspension hearing by certified mail, he failed to appear. Thorne was subsequently suspended and not allowed to register for classes until January 1984.

Following his suspension, Thorne began telephoning various University administra-

---

**1.** W.Va. Code § 61–8–16(a) provides:

(a) It shall be unlawful for any person with intent to harass or abuse another by means of telephone to:

(1) Make any comment, request, suggestion or proposal which is obscene; or

(2) Make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to harass any person at the called number; or

(3) Make or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(4) Make repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number; or

(5) Threaten to commit a crime against any person or property.

**2.** *Thorne v. Hayes,* Civil Action No. 80–3071 (S.D.W.Va.1980).

tors. He called these officials during business hours, after hours and at the individuals' homes. Frequently he would allow the telephone to ring for fifteen to twenty minutes. Although Thorne made several telephone calls, the University specifically documented only five.

At trial before a jury in Cabell County, West Virginia, the officials who received calls from Thorne were presented as witnesses. Each explained a similar pattern for the calls. Thorne would begin the conversation under the pretext that he wanted an explanation for why he could not register for classes. Then his language and tone became harassing. Thorne referred to those he called, as well as other officials at the University, as "pigs," "racists pigs," "bigot" and "local trash." Thorne referred to Dr. Robert Hayes, who had resigned shortly before as President of the University, as "the head hog." Thorne also stated on one occasion that "the law has a way of catching up with people and crushing them."

Thorne testified and admitted making the calls and using the aforementioned harassing language. He testified that he did not feel he had been treated fairly and the purpose of his calls was to get the details of his status.

At the conclusion of testimony the court charged the jury, in part:

> The court instructs that if you find from the evidence beyond a reasonable doubt that the defendant, [Hillery Thorne], made repeated telephone calls during the time period set forth in the indictment to employees of Marshall University, and that a conversation ensued, and that such telephone calls were made by the defendant with the intent to harrass [sic] persons at the called number, then you may find the defendant guilty as charged in indictment.

The jury found Thorne guilty and the court sentenced him to six months in the Cabell County Jail.

The conviction was upheld by an equally divided vote of the Supreme Court of Appeals of West Virginia. *State v. Thorne,* 333 S.E.2d 817 (W.Va.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 413, 88 L.Ed.2d 363 (1985).

## II

### A.

■ We agree with the plurality opinion of the Supreme Court of Appeals of West Virginia and with the district court that W.Va. Code § 61–8–16(a)(4) prohibits conduct and not protected speech. The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct. As the West Virginia court stated:

> Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone.

333 S.E.2d at 819.

Unfortunately, we are without legislative history to guide our interpretation of this statute. The requirement of a specific intent to harass, however, clearly indicates what the West Virginia legislature sought to criminalize. The jury was charged appropriately on intent and returned a guilty verdict. We must conclude, therefore, that the jury was likewise convinced that Thorne's calls were intended to harass.

Congress has enacted a federal telephone harassment statute, 47 U.S.C. § 223(a)(1)(D) (1982)[3] which is practically

---

**3.** The federal telephone harassment statute, 47 U.S.C. § 223 (1982) provides, in relevant part:
  Whoever—

  (1) in the District of Columbia or in interstate or foreign communication by means of telephone—

      \*      \*      \*      \*      \*      \*

identical to the statute at issue in this case. While the federal statute uses the words "solely to harass" in place of the words found in the West Virginia statute "with intent to harass," the Third Circuit construed this as a narrow intent requirement in reaching the conclusion, as we do here, that the statute does not preclude mere communication. *United States v. Lampley*, 573 F.2d 783 (3d Cir.1978). We find the Third Circuit's opinion upholding the constitutionality of the federal telephone statute persuasive as to the constitutionality of the remarkably similar West Virginia statute.

### B.

■ Given our construction of § 61–8–16(a)(4), it is clearly constitutional as applied to Thorne. Even if the statute does stand in the shadow of First Amendment protection, however, we hold that § 61–8–16(a)(4) is not overly broad. "Where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973).

The statute is clearly not a censorial statute, directed at any group or viewpoint. It seeks to protect citizens from harassment in an even-handed and neutral fashion. Indeed, the statute requires no inquiry into the content of the telephone conversation. Moreover, as we noted earlier, West Virginia has a broad, legitimate interest in protecting its citizens from harassment, especially when harassment is accomplished by use of the telephone. In light of the limited application of the overbreadth doctrine in the context of criminal laws sought to be applied to constitutional-

ly unprotected conduct,[4] we conclude that the statute is not only constitutional as applied to Thorne, but is also not so broadly worded as to be facially overly broad.

### III

■ The Petition Clause of the First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." Historically rooted in the 1689 Bill of Rights exacted from William and Mary, the "right to petition is cut from the same cloth as the other guarantees of [the First] Amendment." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789–90, 86 L.Ed.2d 384 (1985). *McDonald* clearly states that the Petition Clause does not enjoy a special status among the First Amendment guarantees, since it "was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble." 472 U.S. at 485, 105 S.Ct. at 2791. Since it is plainly contrary to *McDonald*, we reject Thorne's argument that the Petition Clause enjoys a "preferred place" among First Amendment freedoms.

■ We also reject Thorne's argument that he cannot be properly convicted of a crime for exercising the right to petition.[5] The Petition Clause does not provide blanket immunity for unlawful conduct. *See Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). If the West Virginia statute which Thorne complains of were broadly drawn, so as to be general and all-inclusive, this would be a different case. *See Edwards v. South Carolina*, 372 U.S. 229, 236, 83 S.Ct. 680, 684, 9 L.Ed.2d 697 (1963). Rather, this statute is "narrowly drawn to define and punish specific conduct as constituting a clear and

---

(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; ...

\* \* \* \* \* \*

shall be fined not more than $500 or imprisoned not more than six months, or both.

4. *Broadrick v. Oklahoma*, 413 U.S. at 615, 93 S.Ct. at 2917–18.

5. Undoubtedly, Thorne bases his Petition Clause claim on the assumption that Marshall University, as a state-funded school, is an agency of the government.

present danger to a substantial interest of the State." *Cantwell v. Connecticut* 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940). Since Thorne does not argue that the statute burdens his right to petition in a fashion different from his right to free speech, our constitutional analysis is essentially the same as we exposited in Part II B above and we will not repeat it here.[6] Therefore, Thorne's Petition Clause argument also fails.

## IV

We conclude that W.Va. Code § 61-8-16(a)(4) violates neither the Free Speech Clause nor the Petition Clause, since the statute is narrowly drawn to effect the legitimate interest of government in protecting its citizens from harassing conduct. Accordingly, the judgment of the district court is

AFFIRMED.

BUTZNER, Senior Circuit Judge, dissenting:

An equally divided Supreme Court of Appeals of West Virginia affirmed the conviction and six-month sentence imposed on Hillery C. Thorne, Jr. The opinion of Chief Justice Miller, in which Justice McGraw joined, explains that W.Va. Code § 61-8-16(a)(4), as interpreted by the trial court and the opinion of the two justices who upheld Thorne's conviction, is overbroad and abridges the freedom of speech secured by the first amendment. Chief Justice Miller's opinion also explains the unconstitutionality of the statute's application to Thorne. I subscribe to the sound reasoning of Chief Justice Miller's opinion. *See State v. Thorne*, 333 S.E.2d 817, 821 (W.Va.1985).

**6.** The Supreme Court has recognized that "[a]lthough the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis." *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911-15, 102 S.Ct. 3409, 3424-27, 73 L.Ed.2d 1215 (1982).

## I

Affirmance of the district court's denial of a writ of habeas corpus rests on the mistaken notion that the statute prohibits conduct and not protected speech. Conversation is an essential element of the crime the statute punishes. Without some speech by the defendant there can be no conviction. The statute therefore is constitutional only if, as authoritatively construed by the West Virginia court, "it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments." *Gooding v. Wilson*, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972). Because the Supreme Court of Appeals of West Virginia could not muster a majority, it has not authoritatively construed the essential element of "conversation" to include only unprotected speech.[*] Nor has it authoritatively construed the statute to be limited to conduct, not speech.

The federal district court placed a gloss on the statute narrowing its meaning to punish conduct, not speech. A federal court, however, is unable authoritatively to construe the state statute. *Gooding*, 405 U.S. at 520, 92 S.Ct. at 1105. Consequently this judicial gloss does not insulate the statute from Thorne's challenge that it is overbroad and abridges the freedom of speech protected by the first amendment.

The statute on its face permits the state to prosecute a person who has made repeated legitimate inquiries by phone, even if only protected speech ensued, whenever it is charged that the person intended to harass the recipient of the calls. Chief Justice Miller's opinion describes many legitimate inquiries which if persistently pressed would run afoul of the statute because it is not limited to unprotected

* The West Virginia Constitution states that "[n]o decision rendered by the court shall be considered as binding authority upon any court, except in the particular case decided, unless a majority of the justices of the court concur in such decision." W.Va. Const., Art. 8, § 4. Thorne has standing to raise the issue of overbreadth. *See Broadrick v. Oklahoma*, 413 U.S. 601, 611-15, 93 S.Ct. 2908, 2915-17, 37 L.Ed.2d 830 (1973).

speech. *See* 333 S.E.2d at 824–25. Similarly, Judge Mansfield, concurring in *Gormley v. Director, Connecticut Department of Probation*, 632 F.2d 938, 944 (2d Cir. 1980), illustrates how a statute prohibiting telephone calls made with "intent to annoy" infringes the exercise of free speech when it is not narrowed to exclude legitimate speech. As Judge Mansfield observed, "[T]he First Amendment protects more than just amiable communications.... A telephone harassment statute should be carefully tailored to avoid constitutional vulnerability on the ground that it needlessly penalizes free speech." 632 F.2d at 945.

Precisely because the West Virginia statute is not carefully tailored, it is unconstitutional. It suffers the defect of overbreadth that made unconstitutional a Virginia telephone statute proscribing vulgar, profane, threatening, abusive, or indecent language. *See Walker v. Dillard*, 523 F.2d 3 (4th Cir.1975).

## II

The statute is also unconstitutional as applied to Thorne. Thorne was not prosecuted for causing a telephone to continuously ring, using it to convey threats or obscenities, or making anonymous calls. Such conduct is proscribed by other sections of the statute. All four justices of the West Virginia Supreme Court of Appeals agreed that Thorne's calls "started out in a civil manner." *See* 333 S.E.2d at 819, 821. Without contradiction, Chief Justice Miller noted that the state's witnesses "could only recall the substance of eight calls made over a three and one-half month period." 333 S.E.2d at 821. The evidence discloses that Thorne "was making legitimate inquiries about his status as a student, his eligibility to take certain courses, and an accident on the Marshall University campus when his bicycle was destroyed." 333 S.E.2d at 821. Thus Thorne could not be convicted under the federal telephone harassment statute which proscribes the making of repeated phone calls "during which conversation ensues, *solely* to harass...." (emphasis added). 47 U.S.C. § 223(a)(1)(D) (1982).

Contrary to the gloss the district court put on the statute, the state trial court did not explain to the jury that the statute proscribed conduct, not speech. Throughout the trial the content of Thorne's speech was emphasized as evidence of his intent to harass. The majority opinion correctly identifies the "harassing language" as Thorne's description of university officials and employees as "pigs," "racist pigs," "bigot," and "local trash," and his reference to the former college president as "the head hog." The other "harassing language" attributed to Thorne was his observation that "the law has a way of catching up with people and crushing them."

The evidence supports the majority's identification of the "harassing language." The dean of student affairs testified that she was offended by the language about bigots and pigs and that she hung up the phone. The assistant dean of student development and director of the counseling center testified that he hung up after Thorne talked about pigs and claimed responsibility for the former president's departure, saying "we've barbecued the big hog" and "the little piggys would be next."

There can be no doubt that Thorne's "harassing language" caused his conviction. It is also clear that Thorne's vituperative description of the college officials, who are also public officials, is insufficient to sustain his conviction. In *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949), the Court stated:

> Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, *Chaplinsky v. New Hampshire*, [315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) ], is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

*Chaplinsky*, to which the Court referred, dealt with "fighting words," but no claim has ever been made that Thorne's name calling could be similarly characterized.

Time and again, the Supreme Court has extended the protection of the first amendment to persons who discomfited public officers. In *Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969), the Court reversed the conviction of a person who used "a kind of very crude offensive method of stating a political opposition to the President." In *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed. 2d 1215 (1982), the Court emphasized "[s]peech does not lose its protected character, however, simply because it may embarrass others or coerce them into action." Quite recently the Court has reaffirmed that speech that undoubtedly vexed the persons to whom it was directed is nevertheless protected by the first amendment. *City of Houston v. Hill,* — U.S. —, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). This is true even when the speaker intends to distress the target of his outrageous language. *See Hustler Magazine v. Falwell,* — U.S. —, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

I respectfully dissent.