ACCEPTED
03-13-00509-CR
3650376
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/5/2015 2:02:40 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00509-CR

**IN THE COURT OF APPEALS**
**THIRD DISTRICT**
**AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/5/2015 2:02:40 PM
JEFFREY D. KYLE
Clerk

**TERRY TYRONE ATKINS,**
**APPELLANT**

**vs.**

**THE STATE OF TEXAS,**
**APPELLEE**

APPEAL FROM THE 331ST JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-11-302358

**STATE'S BRIEF**

**Rosemary Lehmberg**
District Attorney
Travis County, Texas

**Kathryn A. Scales**
Assistant District Attorney
State Bar No. 00789128
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax No. (512) 854-4206
Kathryn.Scales@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................. ii
TABLE OF AUTHORITIES ..................................................................................... iii
STATEMENT REGARDING ORAL ARGUMENT ...............................................vi
STATEMENT OF THE CASE.................................................................................vi
STATEMENT OF FACTS ........................................................................................1
SUMMARY OF THE ARGUMENTS ......................................................................3
THE STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR.............4

      The evidence was sufficient to show that the Appellant violated the terms of his deferred-adjudication community supervision. Because retaliation is not a result-oriented offense, it is irrelevant whether the Appellant intended for his statements to be interpreted as threats or whether the statements were designed to inhibit the target's public service as a judge. Because the evidence was sufficient to support the trial court's findings, the trial court did not abuse its discretion....................4

THE STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR.......19

      Appellant's statements were true threats, which are not protected speech. Under the applicable objective standard, the threats would be interpreted by a reasonable person as serious threats to inflict harm...........19

PRAYER .................................................................................................................25
CERTIFICATE OF COMPLIANCE.......................................................................26
CERTIFICATE OF SERVICE ...............................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Blanco v. State*, 761 S.W.2d 38, 40 (Tex. App. —Houston [14th Dist.] 1988, no pet.)...21

*Cada v. State*, 334 S.W.3d 766, 771, (Tex. Crim. App. 2011) ...........................................6

*Cantu v. State*, 339 S.W.3d 688, 691-92 (Tex. App.—Fort Worth 2011) ....................5, 18

*Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).......................................5

*Coward v. State*, 931 S.W.2d 386, 389 (Tex. App. Houston—[14th. Dist.] 1996, no

    pet.).............................................................................................................................6

*Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983) (per curiam).................7, 14

*Garcia v. State*, 212 S.W.3d 877, 888-889 (Tex. App.—Austin 2006, no pet.)..............22

*Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App. —San Antonio 1996, no writ).............14

*In re A.C.*, 48 S.W.3d 899, 903 (Tex. App.—Fort Worth 2001), pet. denied..................13

*In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App. Fort Worth—2002, no pet.)......................6

*Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd.).............18

*Lebleu v. State*, 192 S.W.3d 205, 211 (Tex. App.—Houston [14th Dist.] 2006, pet.

    ref'd).....................................................................................................................7, 17

*Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978).........................................5

*Lindsey v. State*, No. 13-09-00181, 2011 Lexis 5388 (Tex. App.— Corpus Christi

    July 14, 2011) (not designated for publication) ................................................ 15, 16, 17

*Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, no pet.)... 20, 21, 22

*Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) ...................18

*Phillips v. State*, 401 S.W.3d 282, 284 (Tex. App.—San Antonio 2013) ........................13

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) .........................................................21

*Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) ...........................................5

*Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980) .................18

*Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) ...........................22

*Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) ........................................................22

*United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) ........................20

*Virginia v. Black*, 538 U.S. 343, 360 (2003) .....................................................................21

*Watts v. United States*, 394 U.S. 705 (1969) (per curiam) ........................................ 22, 23

*Webb v. State*, 991 S.W.2d 408, 415 (Tex. App. —Houston [14th Dist.] 1999, pet.
    ref'd) .................................................................................................................................22

*Wilkins v. State*, 279 S.W.3d 701, 704 (Tex. App.—Amarillo 2007, no pet. h.) ....... 13, 14

### Statutes

TEX. CODE CRIM. PROC. art. 42.12 § 5(b) ...........................................................................5

TEX. GOV'T CODE § 312.055 ...............................................................................................16

TEX. PENAL CODE § 25.07(g) ............................................................................................ vii

TEX. PENAL CODE § 36.06 ............................................................................................ 14, 16

iv

No. 03-13-00509-CR

IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

TERRY TYRONE ATKINS,
APPELLANT

vs.

THE STATE OF TEXAS,
APPELLEE

APPEAL FROM THE 331ST JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-11-302358

STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS:

The State of Texas, by and through the District Attorney for Travis County,

respectfully submits this brief in response to that of the Appellant.

v

## STATEMENT REGARDING ORAL ARGUMENT

The State believes that oral argument is unnecessary because the briefs filed by the parties adequately present the facts and legal arguments. However, if the Court grants Appellant's request for oral argument, the State respectfully requests that the Court also permit the State to provide oral argument.

## STATEMENT OF THE CASE

On September 9, 2011, Travis County Court at Law 4 issued a protective order prohibiting Appellant from going within two hundred yards of the home of specific woman (hereinafter referred to as "the victim").[1] CR 5. Less than two months later, surveillance camera footage recorded Appellant violating that provision by going to the victim's house at 5:30 in the morning. CR 5. The court issued a warrant for his arrest and Appellant was subsequently indicted for intentionally and knowingly violating the protective order. CR 7; CR 10. The indictment also alleged that Appellant had two prior convictions, in cause number C-1-CR-91-351956 on September 10, 1991, and in cause number C-1-CR-96-454537 on March 28, 1996, for violation of a protective order. CR 10. Those prior convictions enhanced the charged offense to a third-degree felony. *See* CR 10 (charging such); TEX. PENAL CODE § 25.07(g)(1) (requiring such an enhancement).

---

[1]A citation in the form of "CR *y*" refers to page *y* of the Clerk's Record, while a citation in the form of "*x* RR *y*" refers to page *y* of volume *x* of the Reporter's Record.

On May 25, 2012, Appellant pleaded guilty to the offense as charged and Julie Kocurek, presiding judge of the 390th District Court in Travis County, deferred adjudication of guilt and placed Appellant on five years of community supervision. CR 21-24. The community supervision order included numerous conditions. CR 18-20.

On July 30, 2012, the State filed a motion to proceed with adjudication of guilt alleging that Appellant had violated the terms of his deferred-adjudication community supervision by contacting the victim. CR 28. That same day, an arrest warrant was issued for the Appellant. CR 26. At the revocation hearing held on September 4, 2012, the court entered an order continuing community supervision, and added a condition requiring Appellant to complete ninety days of confinement in county jail as a condition of probation. CR 44. On November 9, 2012, the State filed another motion to proceed with adjudication of guilt, but then withdrew that motion on November 13, 2012 CR 45; CR 46.

On March 8, 2013, Judge Kocurek transferred Appellant's case to the 331st District Court. CR 51. On March 19, 2013, the State again moved to proceed with an adjudication of guilt for numerous violations of the terms and conditions of his deferred adjudication. CR 52. On June 14, 2013, the State amended its motion to proceed with an adjudication of guilt. CR 68. The amended motion alleged that Appellant:

1. Failed to allow the supervision officer to visit at home or elsewhere on January 9, 2013;

2. Failed to pay court costs and is delinquent $56.31;

3. Failed to pay a supervision fee and is delinquent $229.93;

4. Failed to pay restitution and is delinquent $225.23;

5. Failed to pay a Family Violence Center fee and is delinquent $17.53;

6. Failed to report to, cooperate with, and participate in a Family Violence Program through CES; and

7. Failed to participate in the Global Positioning System (GPS) program.

CR 68.

The State further alleged that Appellant:

**Committed a subsequent criminal offense in that on or about the 22nd day of February 2013, in the County of Travis, State of Texas, Terry Atkins did then and there intentionally and knowingly threaten another, Julie Kocurek, by an unlawful act, to wit: aggravated assault or capital murder by threatening to shoot Julie Kocurek in retaliation for or on account of the service or status of Julie Kocurek as a Public Servant, to wit: Judge of the 390th District Court.**

*Id.*

On July 19, 2013, after a hearing to consider the State's motion to adjudicate the Appellant's guilt, the court found all of the alleged violations to be true and granted the State's motion. 3 RR 8; CR 75-76. Accordingly, the court found the Appellant guilty of violating a protective order in violation of TEX. PENAL CODE §

viii

25.07(g) and sentenced Appellant to four years of confinement in the Texas Department of Criminal Justice Correctional Institutions Division. CR 75-76.

On July 30, 2013, Appellant filed his notice of appeal. CR 78. On September 20, 2013, the trial court certified Appellant's right to appeal his conviction. CR 91.

**STATEMENT OF FACTS**

The State called four witnesses at the July 19, 2013 hearing on the State's amended motion to revoke community supervision and proceed with an adjudication of guilt. 3 RR 4. A senior probation officer testified that Appellant violated numerous terms of his deferred-adjudication community supervision. 3 RR 11-17. The State then called another probation officer, who also testified that Appellant violated the terms of his community supervision. 3 RR 23-31. These violations included: failing to be present for a home visit. 3 RR 24-25; failing to participate in a family violence class through the Travis County Counseling and Education Services (CES). 3 RR 26; and failing to charge his GPS device and pay associated fees. 3 RR 29-31.

The State also called the owner of a company that contracts with Travis County for GPS monitoring of people on community supervision. 3 RR 38. That witness testified that she heard Appellant threaten to kill the judge overseeing his case due to the judge's actions in his case. 3 RR 42-43. Another employee at that company testified that she heard Appellant say, "I will pop that judge. Pow." 3 RR 65.

The court found all of the alleged violations to be true and granted the State's motion. CR 75-76. Accordingly, the court proceeded to find Appellant guilty of violating the protective order, which was enhanced to a third-degree

1

felony. 3 RR 139. The Court then assessed punishment at four years of confinement in the Texas Department of Criminal Justice Correctional Institutions Division. CR 75.

# SUMMARY OF THE ARGUMENTS

**Point One:** In his first point of error, Appellant argues that the trial court abused its discretion because the evidence was insufficient to support the trial court's finding that he violated his community supervision conditions by, inter alia, committing the offense of retaliation against Judge Kocurek. The evidence was, however, sufficient to support the court's findings. The Appellant also argues that the court abused its discretion because there is insufficient evidence that the Appellant actually intended to harm Judge Kocurek or inhibit her public service. In fact, the State was not required to prove those two issues because retaliation is not a result-oriented offense. Because the evidence was sufficient to support the trial court's finding that Appellant violated the terms of his community supervision, the court did not abuse its discretion, and Appellant's first point of error should be overruled.

**Point Two:** The Appellant's statements were true threats, which are not protected speech. The objective standard applies to evaluating whether statements are threats that may be restricted. Under this standard, the statements were threats because a reasonable person would understand Appellant's statements as threatening bodily harm. Appellant's second point of error should, therefore, be overruled.

## THE STATE'S REPLY TO APPELLANT'S FIRST POINT OF ERROR

**The evidence was sufficient to show that the Appellant violated the terms of his deferred-adjudication community supervision. Because retaliation is not a result-oriented offense, it is irrelevant whether the Appellant intended for his statements to be interpreted as threats or whether the statements were designed to inhibit the target's public service as a judge. Because the evidence was sufficient to support the trial court's findings, the trial court did not abuse its discretion.**

In his first point of error, Appellant claims that trial the court abused its discretion because there was insufficient evidence to show that he had the intent to harm Judge Kocurek, and because he "did not intend nor was he reasonably certain that this statements would be interpreted as expressions of intent to harm a public servant." Appellant's Brief at 10. Appellant also argues that "there was no evidence that [he] was reasonably certain that his statement would inhibit the judge's service as a public official." Appellant's Brief at 10.

The record reflects that the evidence was sufficient to support the trial court's determination. Moreover, the retaliation statute does not require the State to prove that the person issuing the threat actually intend to harm the threat's target, nor does it require that the statement be designed to inhibit the target's service as a public official. The court, therefore, did not abuse its discretion.

<u>*Standard of Review:*</u>

A trial court's decision to revoke deferred-adjudication community supervision and proceed to an adjudication of guilt is reviewed for abuse of discretion, which is the same standard that governs the revocation of regular community supervision. *Cantu v. State*, 339 S.W.3d 688, 691-92 (Tex. App.—Fort Worth 2011, no pet.), citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *see also* TEX. CODE CRIM. PROC. art. 42.12 § 5(b).

The trial court does not abuse its discretion if the order revoking community supervision is supported by a preponderance of the evidence; in other words, the greater weight of the credible evidence would create a reasonable belief that the defendant has violated a condition of his or her community supervision. *Rickels*, 202 S.W.3d at 763-64. An appellate court reviews the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The reviewing court must respect the fact-finder's role to evaluate the witnesses' credibility, to resolve conflicts in the evidence, and to draw reasonable inferences, and it assumes that the fact-finder resolved evidentiary issues in a way that supports the judgment. *Limuel v. State*, 568 S.W.2d 309, 311 (Tex. Crim. App. 1978).

*Applicable law:*

In this case, the court found Appellant guilty of violating the terms of his deferred-adjudication community supervision by, *inter alia*, committing the offense of retaliation against Judge Kocurek. 3 RR 139. Section 36.06(a)(1)(A) of the Texas Penal Code lays out the elements of the retaliation offense applicable to the instant case:

> (a)   A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:
> > (1)  in retaliation for or on account of the service or status of another as a:
> > > (A)  public servant……

The retaliation statute serves important policy considerations. As the Court of Criminal Appeals has held, "A central purpose of the retaliation statute is to encourage a specified class of citizens—which includes public servants, witnesses, prospective witnesses, and informants—to perform vital public duties without fear of retribution." *Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011).

The retaliation statute does not require that the threatened harm be imminent, nor does it require that the actor actually intend to carry out his threat. *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.); *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App. —Houston [14th. Dist.] 1996, no pet.). Nor does the retaliation statute require that the threat be communicated directly to the

person being threatened. *Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983) (per curiam). Finally, the statute does not require proof that Appellant took any affirmative steps to carry out the threat. *Lebleu v. State*, 192 S.W.3d 205, 211 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

*Application of Law to the Facts:*

In his first point of error, Appellant begins by asserting that the State's "evidence is insufficient to support the trial court's finding that the Appellant had violated his community supervision." Appellant's Brief at 5. A review of the record, however, shows that the evidence was more than sufficient.

The State filed its original Order of the Court Deferring Further Proceedings on June 1, 2012. CR 21. The order was effective for five years from that date, and it contained numerous community supervision conditions. CR 21. One of those conditions was that Appellant, "Commit no offense against the laws of this or any State or of the United States." CR 21. Over the next five months, the State filed two Motions to Proceed with an Adjudication of Guilt. Instead of revoking Appellant, the court entered an order, on September 4, 2012, amending Appellant's conditions of community supervision. CR 42-43. That order continued all of the conditions of the original order, and further confined Appellant to jail for a period

7

of 90 days and compelled Appellant's participation in GPS monitoring for the following fourteen months. CR 42.

A mere six months later, on March 19, 2013, the State filed another Motion to Proceed with an Adjudication of Guilt. That Motion, which was amended on June 14, 2013, alleged that Appellant had violated the terms and conditions of his deferred-adjudication community supervision by:

1. Failing to allow the Supervision Officer to visit at home or elsewhere on January, 9, 2013;

2. Failing to pay Court Costs and is delinquent $56.31;

3. Failing to pay Supervision fee and is delinquent $229.93;

4. Failing to pay Restitution and is delinquent $225.23;

5. Failing to pay Family Violence Center fee and is delinquent $17.53;

6. Failing to report to, cooperate with and participate in a Family Violence Program through CES;

7. Failing to participate in the Global Positioning System (GPS) program;

8. Committing a subsequent criminal offense in that on or about the 22nd day of February, 2013, in the County of Travis, State of Texas, Terry Atkins did then and there intentionally and knowingly threaten another, Julie Kocurek by an unlawful act, to wit: aggravated assault or capital murder by threatening to shoot Julie Kocurek in retaliation for or on account of the service or status of Julie Kocurek as a Public Servant, to wit: Judge of the 390th District Court.

CR 68.

8

At the July 19, 2013 hearing to revoke community supervision and adjudicate Appellant, the State presented evidence of Appellant's violations through four witnesses. 3 RR 4. Viewed in the light most favorable to the trial court's ruling, the evidence presented during the hearing supports the trial court's finding that Appellant violated the terms of his community supervision.

The State's first witness was John Pratt, a senior probation officer for the Travis County Adult Probation Office. 3 RR 11. Mr. Pratt supervised Appellant in his capacity as a probation officer. 3 RR 11. He testified that Appellant was in violation of numerous terms of his deferred-adjudication community supervision when the State filed its motion to revoke community supervision and proceed with an adjudication of guilt. 3 RR 13. As Mr. Pratt testified, Appellant's violations included:

1. Failing to be present for a home visit on January the 9th, 2013 (3 RR 13);

2. Failing to pay $56.31 in court costs (3 RR 16);

3. Failing to pay a $229.93 supervision fee (3 RR 16);

4. Failing to pay $225.23 in restitution (3 RR 16);

5. Failing to pay a $17.53 Family Violence Center fee (3 RR 16-17); and

6. Failing to report, cooperate with, or participate in the family violence program (3 RR 17).

The State then called Charles Hoy, a Travis County Probation Officer, who supervised Appellant during his community supervision. 3 RR 23. Mr. Hoy

9

testified that he was the probation officer who had been scheduled to conduct a home visit with Appellant on January 9, 2013, but that the meeting did not occur because Appellant was not home or did not answer the door, and that he did not answer his phone. 3 RR 24-25. Mr. Hoy also testified that he ordered Appellant to participate in a family violence class through the Travis County Counseling and Education Services (CES), but that Appellant failed to do so. 3 RR 26. He further testified that Appellant failed to participate in the Global Positioning System (GPS) monitoring program by failing to charge his device and pay associated fees. 3 RR 29-31.

The State then called Rachele Smith, the owner of Victims Safety First, a company that provides Travis County with GPS and electronic monitoring of people on community supervision. 3 RR 38. She testified that she knew Appellant because her company provided him with his court-ordered GPS device. 3 RR 40. Smith testified that, around 4:30 p.m. on February 22, 2013, she was finishing a phone conversation just outside of her office when Appellant walked out of the office and started talking to her. 3 RR 41. After complimenting Smith on her car, he then began threatening to kill Judge Kocurek:

> **A: He said, "Pow. I'll kill that fucking judge. Pow. I'll kill the fucking cop. And do you know why? Because I do not care. They have interfered with my constitutional right to the pursuit of happiness."**

10

**And I said, "Hang on now. Whoa, whoa, whoa." He goes, "I'm not mad at you. You can ask your people. I come in here all the time talking stuff. I'm not mad at you." But -- and he made the symbol again. He said, "I don't care. Pow. I'll kill that fucking judge. I hate Judge Kocurek. She put me in jail without representation and I stayed there for months over" -- I believe he said -- "over Facebook."**

**Q: For the record, when you're making that gesture that you're calling the symbol of a gun, you've got your thumb erect and your first finger extended as if it were the barrel of a gun?**

**A: Yes.**

**Q: Okay.**

**A: He's like, "Pow. Pow."**

**Q: Now, he said, "I'll kill that fucking judge." Did he ever specifically say, "I'll kill Judge Kocurek"?**

**A: Yes, he did. He said, "I hate that bitch, Judge Kocurek."**

**Q: And he threatened to kill her?**

**A: Yes. He named her specifically. He said he hated her and that he would kill her and that he would kill a cop. He did not care.**

3 RR 42-43.

In response to the Appellant's threats, Smith called the police, filed an incident report, and immediately contacted Appellant's probation officer. 3 RR 45. She also contacted Marsha Morgenroth, a probation supervisor, so that Judge Kocurek would be aware of the threat on her life. 3 RR 45.

11

The State then called Rebecca Chatagnier, an employee at Victim Safety First. 3 RR 63. She testified that she was outside the office smoking a cigarette while Smith and Appellant were talking. 3 RR 64. As she was putting her belongings in her car, she heard Appellant say that something was "a violation of his civil rights." 3 RR 64. She then saw Appellant use his finger and thumb to make a gun sign and say, "I will pop that judge. Pow." 3 RR 65. While Chatagnier could not say whether Appellant was serious about carrying out his threats, she testified that "I don't think he was joking." 3 RR 66.

At the conclusion of the revocation hearing, the trial judge pronounced his ruling:

> **I find the allegations in the motion with regard to failure to allow the officer to visit at your home to be true, I find the failure to participate in Global Positioning System to be true, and I find the allegation in the new offense of retaliation to be true. I hereby find you guilty of violation of a protective order and a third-degree felony.**

3 RR 139.

When considered as a whole and viewed in the light most favorable to the trial court's ruling, the evidence is clearly sufficient to support the trial court's determination that the alleged violations were true under the applicable preponderance of the evidence standard. The State produced evidence that the Appellant threatened Judge Kocurek, and that he made the threat in retaliation for

12

her service as the judge in his case. Accordingly, the Appellant's first point of error should be overruled.

As part and parcel of his first point of error, Appellant contends that retaliation is a result-oriented offense and that, consequently, the trial court abused its discretion by finding that he had committed the offense where the State failed to demonstrate that he had the requisite intent to harm Judge Kocurek or to inhibit her role as a public servant. Appellant's Brief at 7. To support this argument, the Appellant cites three cases: *Phillips*, *In re A.C.*, and *Wilkins*. Appellant's Brief at 7.

*Phillips* is inapplicable to this case because it did not construe the retaliation statute. *See Phillips v. State*, 401 S.W.3d 282, 284 (Tex. App.—San Antonio 2013) (analyzing the terroristic threat statute—not the retaliation statute—when reciting the rule that, "The focus of the intent inquiry is on the intended reaction."). *In re A.C.* is, likewise, inapplicable for the same reason. *See In re A.C.*, 48 S.W.3d 899, 903 (Tex. App.—Fort Worth 2001, pet. denied) (construing the terroristic threat statute).

*Wilkins*, on the other hand, does concern the relevant statute in this case. The State, however, would respectfully argue that, in its holding in *Wilkins*, the Amarillo Court of Appeals improperly conflated the obstruction and retaliation subsections of the statute and, in doing so, placed unnecessary focus on the effect of appellant's threats on the victim. *See Wilkins v. State*, 279 S.W.3d 701, 704

(Tex. App.—Amarillo 2007, no pet.) (noting that "there is no evidence that Appellant intended or was reasonably certain that his stated intent for" the judge's death would affect that judge's performance or cause him "to fear retribution").

The source of this conflation appears to spring from the Amarillo court's confused interpretation of three opinions. *See id.* (holding that "the retaliation charge against Appellant was a result-oriented offense" and citing, as support, *Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App. —San Antonio 1996, no writ), *In re B. P. H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.), and *Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983) (per curiam). On closer inspection, however, those three cases provide no tangible support for the holding in *Wilkins*.

In *Herrera*, the court construed TEX. PENAL CODE § 36.06(a)(2), which is the obstruction subsection of the statute. The Herrera court held that "***obstruction*** is in fact a result-oriented offense." *Herrera v. State*, 915 S.W.2d 94, 97 (Tex. App.—San Antonio 1996)(emphasis added). The holding in *Herrera* does not, however, support the proposition that ***retaliation*** is also a result-oriented offense.

*In re B. P. H.*, on the other hand, does state, "Retaliation is a result-oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute." 83 S.W.3d at 407. The only authority that the court cites to support this statement, however, is a citation to *Herrera*, which, as has

14

been established, set forth the rule that ***obstruction, not retaliation,*** is a result-oriented offense.

The State offers instead, for this Court's consideration, a holding out of the Corpus Christi Court of Appeals that appears to more accurately address arguments similar to those made by Appellant. *Lindsey v. State*, No. 13-09-00181, 2011 Lexis 5388, at *1 (Tex. App.— Corpus Christi July 14, 2011) (not designated for publication). This opinion, though unpublished, is particularly helpful because it highlights the problem with using *Wilkins* and *Doyle* to support the proposition that retaliation is a result-oriented offense.

In *Lindsey*, the appellant was convicted of retaliation. *Lindsey v. State*, No. 13-09-00181, 2011 Lexis 5388, at *1 (Tex. App.— Corpus Christi July 14, 2011) (not designated for publication). Lindsey appealed his conviction by challenging the sufficiency of the evidence, and the court of appeals affirmed the trial court's judgment. *Id.* at *1. The Texas Court of Criminal Appeals vacated the judgment and remanded the case to the appellate court to address the legal sufficiency argument more completely. *Id.* at *1-2. The court of appeals subsequently affirmed on remand. *Id.* at *2.

The appellant in the *Lindsey* case argued that the evidence was insufficient to support his conviction because the State failed to establish that his statements to a police officer "were in any way directed to inhibit [a witness] from reporting

criminal activity or acting as a witness." *Id.* at *3. The court determined that that the retaliation statute does not require a showing that the defendant intended to exert an inhibitory effect on the threatened individual. *Id.* at *11-*12. Second, the court determined that "a close examination of the statute supports the conclusion that retaliation does not require a showing of intent to inhibit the behavior of the target of the threat." *Id.* at *12. This is because Section 36.06(a) of the Penal Code defines two crimes: retaliation and obstruction. *Lindsey*, 2011 Lexis 5388, at *12; *see* TEX. PENAL CODE § 36.06(a)(1), (a)(2). Obstruction, described in subsection (a)(2), requires a showing that the defendant intended "to prevent or delay the service of another" as a public servient. *See* TEX. PENAL CODE § 36.06(a)(2). Retaliation, on the other hand, does not. *See* TEX. PENAL CODE § 36.06(a)(1).

As noted in *Lindsey*, "The Legislature could have easily included an 'intent to inhibit' element in the definition of retaliation—as it did in the definition of obstruction—but it chose not to, and it is not in a reviewing court's province to add that element." *Lindsey*, 2011 Lexis 5388, at *12-13 (citing TEX. GOV'T CODE § 312.055 (requiring reviewing courts to give effect to the Legislature's intent as expressed in the statute's plain language)). The Fourteenth Court of Appeals in Houston came to the same conclusion:

> **The crime of retaliation does not require intent to follow through with a threat. It is not an element of the crime. So long as a person issues a threat, knowingly and intentionally, and for the reasons set out in the statute, then she is guilty of the crime.**

16

*Lebleu v. State*, 192 S.W.3d 205, 211 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Finally, the court in *Lindsey* noted the conflicting authority found in *Wilkins* and explained why it would not follow the Amarillo Court of Appeals:

> **The *Wilkins* court cites only *Doyle* in asserting that a showing of the defendant's "intent to inhibit" is necessary to obtain a retaliation conviction, but *Doyle* says nothing of the sort. The *Doyle* Court did recognize that "[a] central purpose of the statute is to encourage a certain class of citizens to perform vital public duties without fear of retribution," 661 S.W.2d 726, 729 (Tex. Crim. App. 1983), but it did not imply that the defendant must have had the "intent to inhibit" in order to convict. Moreover, as noted, the statute contains no requirement, explicit or implicit, that the defendant actually intend for the victim to hear or appreciate the threat. The making of the threat itself is what is criminalized under the plain language of the statute—not the communication of that threat to the victim.**

*Lindsey*, 2011 Lexis 5388, at *17, n.4.

Because the statutory language is clear that retaliation is not a result-oriented offense—as confirmed by *Lebleu* and *Lindsey*—Appellant's claim that he should be granted relief because there was no evidence that he actually intended to harm Judge Kocurek, or that his statement would inhibit the judge's service as a public official, is without merit. Consequently, his first point of error should be overruled.

In the final analysis, Appellant's first point of error should be denied because the court did not abuse its discretion in determining that he violated the terms of his deferred-adjudication community supervision. Significantly, "[p]roof

17

by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order." *Cantu*, 339 S.W.3d at 691-92 (citing *Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); and *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.— Fort Worth 2005, pet. ref'd.)).

As previously established, there is sufficient evidence that Appellant violated numerous terms of his community supervision, including: failing to allow the probation officer to conduct the scheduled home visit; failing to participate in Global Positioning System; and committing the offense of retaliation against Judge Kocurek. 3 RR 139. The court subsequently found Appellant guilty of violating the protective order. 3 RR 139.

As required, the State proved by a preponderance of the evidence that the Appellant violated the terms and conditions of his community supervision. The State satisfied its burden because the greater weight of the credible evidence before the court created a reasonable belief that it was more probable than not that Appellant violated his community supervision conditions. In this case, the trial court's determination was not "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." Because the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and

18

viewing the evidence in the light most favorable to the trial court, Appellant's point of error should be overruled.

## THE STATE'S REPLY TO APPELLANT'S SECOND POINT OF ERROR

**Appellant's statements were true threats, which are not protected speech. Under the applicable objective standard, the threats would be interpreted by a reasonable person as serious threats to inflict harm.**

In his second point of error, Appellant argues that his statements were not threats, but rather constitutionally-protected speech given the context of the conversation in which those statements were made. Appellant's Brief at 12. Specifically, Appellant points to his testimony during the revocation hearing that, during the conversation in question outside the GPS monitoring business, he allegedly stated, "I'm going to pursue this no matter how long it takes. I'm going to pursue and find me a good lawyer to . . . address it."[2] Appellant's Brief at 12; 3 RR 105. Appellant's point of error should be overruled. First, threats are not protected speech. Second, the objective standard applicable to this issue indicates that the trial court properly determined that Appellant's statements were threats.

*Applicable Law:*

---

[2] Only Appellant himself, when he took the stand, produced evidence of making such a statement. No other witness or testimony corroborates his self-serving statement.

The Austin Court of Appeals has held that an objective standard applies when considering whether a statement qualifies as a threat:

> Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault.

*Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, no pet.), citing *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990).

The test is whether the threat would "justify apprehension by an ordinary hearer," not whether the threat actually caused the recipient to become apprehensive. *Manemann*, 878 S.W.2d at 337. Threats need not be directly communicated. *Id.* Additionally, "Alleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners." *Id.*

Courts applying the objective standard to factually comparable cases have determined that expressions similar to those made in the instant case were threats. *See*, *e.g.*, *id.* at 338. In *Manemann*, the Appellant called a police officer and said, "I know where you work and I'm going to get your ass, mother fucker." *Id.* at 336. The Austin Court of Appeals applied the objective standard and determined that:

> **The trial court, as the fact finder, could rationally conclude that a reasonable person would understand the telephone communication to [the police officer] as a threat to inflict serious**

20

**bodily injury or to commit a felony, intentionally made in a manner likely to alarm an ordinary recipient.**

*Id.* at 338.

Accordingly, this Court in *Manemann* determined that the evidence was sufficient to support the trial court's determination that the threat was unlawful speech not protected by the U.S. Constitution. *Id.*

In addition, the United States Supreme Court has long recognized that the Constitution permits government to proscribe "true threats." *Virginia v. Black*, 538 U.S. 343, 360 (2003); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment"). The Supreme Court mandates that the government distinguish between protected expressions and true threats. *See Watts*, 394 U.S. at 707 (stressing that any regulation of pure speech must be interpreted with the First Amendment in mind). Further, "true threats" include "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 360

Since the retaliation statute only punishes threatening speech, it does not implicate a substantial amount of constitutionally protected conduct. *Blanco v. State*, 761 S.W.2d 38, 40 (Tex. App. —Houston [14th Dist.] 1988, no pet.). Similarly, "threats and harassment are not entitled to First Amendment protection." *Garcia v. State*, 212 S.W.3d 877, 888-889 (Tex. App.—Austin 2006, no pet.); *see*

*also Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam) (stating that, "What is a threat must be distinguished from what is constitutionally protected speech."); *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (stating that there is a "distinction between communication and harassment" and that "courts have the power to enjoin harassing communication"); *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) ("Prohibiting harassment is not prohibiting speech, because harassment is not protected speech."); *Webb v. State*, 991 S.W.2d 408, 415 (Tex. App. —Houston [14th Dist.] 1999, pet. ref'd) ("A threat is not protected speech.").

Comments can be evaluated as threats based, not just on the language used, but also the context within which they are uttered, even as veiled threats. *Manemann*, 878 S.W.2d at 338. The focus on context derives from *Watts*, in which the Supreme Court noted that statutes criminalizing "a form of pure speech must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." 394 U.S. at 707. In *Watts*, the petitioner, speaking at a public rally near the Washington Monument, expressed his unwillingness to serve in Vietnam: "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. The Court concluded that, "taken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners [who responded

22

with laughter]," the "kind of political hyperbole indulged in by petitioner" was merely "a kind of very crude offensive method of stating a political opposition to the President," and was not a true threat. *Id.* at 708.

### *Application of Law to the Facts:*

Based on the evidence in this case, Appellant's statements were "true threats" such that the First Amendment does not protect them. As noted, whether speech constitutes a "true threat" is not determined by the intent of the speaker, but rather from the viewpoint of a reasonable recipient. Unlike in *Watts*, the threat in this case was not conditioned on some future event, nor did the audience respond with laughter. Rachele Smith, the owner of Victims Safety First, understood the Appellant's statements—including "Pow. I'll kill that fucking judge. I hate Judge Kocurek"—to be very serious threats. Upon hearing the threats, she immediately called the police, filed an incident report, and contacted the Appellant's probation officer. 3 RR 45. She also contacted a probation supervisor so that Judge Kocurek would be aware of the threat on her life. 3 RR 45. There is additional evidence that the Appellant's statements were true threats from the viewpoint of a reasonable recipient: upon learning of the threats, Judge Kocurek removed herself from the case and transferred it to another judge just days after the Appellant made those threats. CR 51. A separate judge overseeing the revocation hearing also considered the statements to be true threats when he found three community supervision

23

violations—including retaliation against Judge Kocurek—to be true, revoked Appellant's community supervision, adjudicated his guilt, and sentenced him to four years of confinement in state prison. CR 139; 142. Accordingly, the Appellant's second point of error should be overruled.

## PRAYER

WHEREFORE, the State requests that the Court overrule the Appellant's points of error and affirm the judgment of the trial court.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County

Law Clerk: Micah King

/s/ Kathryn A. Scales
**Kathryn A. Scales**
Assistant District Attorney
State Bar No. 00789128
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax No. (512) 854-4206
Kathryn.Scales@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the State certifies that the length of this response is 5,343 words, which is within the limits imposed by the Rule. The State also certifies, pursuant to Texas Rule of Appellate Procedure 9.4(e), that a conventional 14-point typeface was used to generate this brief.

/s/ Kathryn A. Scales
Kathryn A. Scales

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 2nd day of January, 2015, the foregoing State's brief was sent, via U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the Appellant's attorney, Amber Vazquez Bode, at 1004 West Avenue, Austin, Texas 78701.

/s/ Kathryn A. Scales
Kathryn A. Scales