**AFFIRMED; Opinion Filed May 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-13-01329-CR

---

**PAUL HENRI WAGNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA-1114870L**

---

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

Paul Henri Wagner appeals his misdemeanor conviction for violating a protective order.

In three issues, appellant challenges (1) the constitutionality of the statute and information under

which he was charged, (2) the sufficiency of the evidence to support his conviction, and (3) the

admission of certain evidence. Concluding that appellant's issues lack merit, we affirm the trial

court's judgment.

### BACKGROUND

This matter arises out of a series of communications appellant sent to Laura, his wife at

the time, during the three-week period immediately following the issuance of a protective order

prohibiting him from "[c]ommunicating directly with [Laura] . . . in a threatening or harassing

manner."[1]  Viewed in the light most favorable to the verdict, the evidence at trial revealed the following events.

One day after the order was signed, Laura sent appellant a text message stating, "I pray for u[sic] everyday [sic].  That you would be humbled in the sight of the Lord and redeemed."  The next day, November 18, appellant texted Laura that he prayed for her every day too.  The two exchanged texts about whether appellant had obtained a job and family finances, and appellant then inquired whether Laura had an attorney.  When Laura did not reply to this text, appellant texted, "Are you still wanting to talk?"  She responded, "I think it would be best to not talk except through email."  Appellant responded "Why?" to which Laura replied, "Please just respect my wishes."

The following day, appellant emailed Laura about bills, to profess his love for her, and express his desire to be reconciled.  On November 23, appellant texted, "I miss you so much Laura."  She did not respond.  On November 25, appellant sent Laura a text about whether he could pay the daycare bill online.  The two exchanged a few texts about financial matters, and then appellant sent Laura a text expressing his desire "to be Ephesians 5:25-30" for her, how much he loved and missed her, and wished that "God would soften your heart towards me."  Laura did not reply to the text.

On November 26, Laura texted appellant about whether his medical insurance was still in effect.  Instead of answering the question directly, appellant asked if she went to the doctor and whether she was alright.  He then texted her, "don't be cold and hard towards me" and "My heart is in so much pain without you.  I can't correspond with you like this anymore.  I'm sorry."

---

[1] The protective order also contains a finding that family violence occurred and that family violence was likely to occur in the foreseeable future.

Only after Laura responded that their daughter needed medicine, did appellant confirm their insurance was suspended.

On November 28, appellant sent Laura several texts asking for bedding and whether Laura had an attorney. Appellant then texted Laura, "It would be so much easier if we could just talk on the phone." When Laura didn't respond, appellant texted, "Can we talk on the phone?" After Laura refused and told appellant she was trying to go to bed, appellant again texted Laura to inquire whether she had a lawyer. Laura responded, "Stop texting me."

On November 30, appellant emailed Laura about money in a bank account and the two exchanged four more emails from November 30 to December 2 about finances. On December 5, however, after he was served with the divorce petition, appellant phoned Laura and left a voicemail in which he was upset and begging her not to divorce him.[2] That same day, he sent Laura a long email replete with love poems, prayers, bible references, memories from their life together, professions of his love for Laura, pleas for reconciliation, and requests to be forgiven. As it appears in the record, the December 5 email is six single-spaced typed pages. The email begins:

> To you I share my heart.
>
> Poetry
>
> Dec. 2, 2011
>
> Your face is always in my mind and I look at your pictures often. I greatly desire that I had more pictures of you to look at. You are so beautiful and I love to look into your eyes. Why didn't I see it before? I was blinded by how majestic you are.

---

[2] Laura testified that after the protective order was signed, appellant left two or three voice mails on her phone.

The email also included lines such as "Without you my world is destroyed and I am thrown into loneliness and despair" and "God hates divorce and although you feel you have that right, I beg for your mercy." Appellant goes on to acknowledge:

> Due to the ways of men and the powers that be, I have been prohibited from coming before her in humility to profess my love. 'Do not speak or write,' they say. 'A weapon against you will be sought after in your words of love. She brought down men who seek destruction on you twice already. Why would you even trust her a third time?' But I cannot be silent any longer. My heart fails for not proclaiming my love for Laura.

Appellant sent another email to Laura on December 6 which began, "Why did you deceive me?" referring to Laura's hiring of an attorney. Appellant urged her to "[c]ancel this divorce and let us be separated for a time until I can prove myself to you."

On December 7, appellant emailed Laura again. Although the first paragraph of the email requested information from Laura with respect to appellant's denial of unemployment compensation benefits, the remaining four paragraphs were a plea for reconciliation stating, among other things, "Please don't divorce me Laura. I'm begging you, please. I'll do anything."

On December 8, appellant sent Laura another email at 7:21 a.m. pleading with her not to proceed with the divorce and stating, "Is there anything I can do for you not to divorce me? I am in agony right now knowing what divorce will do to us and [our child]. What will she think about God and marriage growing up in a divorced family?" He sent Laura yet another email on December 8 at 2:26 p.m. requesting her help, stating he saw a woman and child that reminded him of his mom and his daughter and he had been having anxiety attacks all day and trouble breathing and didn't know what to do. That night, at 8:08 p.m., appellant sent an email to numerous members of the couple's church begging them to help him in his efforts to stop the divorce and reconcile with Laura by contacting her on his behalf. Although church-friends informed Laura about appellant's email, no one from their church complied with appellant's

–4–

request to urge her to reconcile with him. Two days later, Laura complained to the police that appellant had violated the protective order.

Appellant was charged by information with the misdemeanor crime of violation of a protective order pursuant to section 25.07(a)(2)(a) of the Texas Penal Code. The statute provides, among other things, a person commits an offense if, in violation of a family violence protective order, he knowingly or intentionally communicates directly with a protected individual "in a threatening or harassing manner." *See* TEX. PENAL CODE ANN. § 25.07(a)(2)(A) (West Supp. 2014). The information substantially tracked the statutory language of the offense, alleging that appellant intentionally and knowingly communicated directly with Laura in a threatening and harassing manner in that he made repeated telephone calls and sent repeated text messages and emails to Laura in violation of the protective order. Appellant pleaded not guilty and, after a jury trial, was convicted of the offense. This appeal followed.

## ANALYSIS

In his first issue, appellant contends that the language "communicates . . . in a . . . harassing manner" as used in section 25.07(a)(2)(A) is unconstitutionally vague and overbroad, and violates his rights to free speech and freedom of religion under the United States and Texas constitutions. He asserts the statutory language violates the First and Fourteenth Amendments to the United States Constitution as well as sections six and eight of Article I of the Texas Constitution. Additionally under this issue, appellant asserts the use of the word "repeated" in the information is unconstitutionally vague and overbroad and violates articles 21.02(7) and 21.21(7) of the Texas Code of Criminal Procedure.[3] This issue is multifarious because it

---

[3] Appellant complains that the information failed to give notice of the specific acts for which his conviction was sought. Because he failed to raise this objection before trial, he waived the complaint. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *Jacobsen v. State*, 325 S.W.3d 733, 739–40 (Tex. App.—Austin 2010, no pet.).

embraces multiple legal theories in a single issue. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Nevertheless, to the extent that we can discern, and appellant has properly preserved and briefed various arguments under this issue, we may address them in the interest of justice. *See id*.

The constitutionality of a statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). In assessing a statute's constitutionality, we start with the presumption that the statute is valid and the legislature did not act arbitrarily or unreasonably in enacting the statute. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). As the party challenging the statute, appellant has the burden of establishing its unconstitutionality.[4] *Id*. We must uphold the statute if we can determine a reasonable construction that renders it constitutional. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

Appellant's overbreadth and vagueness complaints, as we understand them, are based on the statute's failure to define "in a harassing manner." Appellant argues that the failure to define "in a harassing manner" makes section 25.07(a)(2)(A) overbroad and vague because it allowed him to be prosecuted and convicted for speech protected by the First Amendment, such as his communications with Laura about money, bills, their child, and his desire to avoid a divorce.

A statute is not vague or overbroad simply because a word or phrase is not specifically defined. *See Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1977). Undefined terms

---

[4] In his initial appellate brief, appellant applied the above presumption and burden of proof to his constitutional challenges. In his reply brief, however, appellant asserts *Ex Parte Lo* controls. *Lo* reverses the presumption and burden of proof for facial constitutional challenges to content-based regulations, described as "laws that distinguish favored from disfavored speech based on the ideas expressed." *Id*. at 15. In a single paragraph without any legal analysis or discussion appellant concludes *Lo*'s presumption and burden of proof applies here because "the prosecution seeks to punish speech it 'disfavored' 'based on the ideas expressed.'" Because appellant first raised this argument in his reply brief and has not put forth any discussion or authority establishing the statute under which he was convicted was a content-based regulation, and the statute itself does not address the content of communications, we apply the presumption and burden of proof generally applicable to challenges involving the constitutionality of statutes.

are typically given their plain meaning unless the language is ambiguous or the plain language leads to absurd results the Legislature could not have possibly intended. *See Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). We may consult standard dictionaries in determining the fair, objective meaning of undefined statutory terms. *See Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). A person harasses another when he persistently disturbs, bothers continually, or pesters that person. *See* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 645 (1989).[5] Harassment is not protected speech under the First Amendment and is not communication, although it may take the form of speech. *See Garcia*, 212 S.W.3d at 888–89 (quoting *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988)). Because section 25.07(a)(2)(A) only prohibits intentional or knowing communication with a protected individual that is threatening or harassing, we reject appellant's overbreadth challenge. *See id.* at 889.

A statute may be unconstitutionally vague even if it is not overbroad. *Garcia*, 212 S.W.3d at 899. A statute may be challenged as unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and establish definite guidelines for law enforcement. *See Scott v. State*, 322 S.W.3d 662, 665 n.2 (Tex. Crim. App. 2010). A defendant must first show the statute is unconstitutionally vague as applied to his conduct before he can complain the statute is vague on its face.[6] *Village of Hoffman Estates v.*

---

[5] Appellant cites us to the definition of harass utilized by the Austin Court of Appeals in holding section 25.07(a)(2)(A) was not facially vague. *See Garcia v. State*, 212 S.W.3d 877, 890 (Tex. App.—Austin 2006, no pet.). Instead, we rely on the dictionary definition of harassment we used previously in *Patton v. State*, 835 S.W.2d 684 (Tex. App.—Dallas 1992, no pet.). *Patton* involved a sufficiency challenge to three convictions for violating a protective order under the predecessor statute that, like current section 25.07 (a) (2) (A), provided a person commits an offense if, in violation of an order issued pursuant to certain sections of the family code, he "knowingly or intentionally . . . (2) directly communicates with a member of the family or household in a threatening or harassing manner . . . ."

[6] Appellant appears to argue that section 25.07(a)(2)(A) implicates the free-speech guarantee of the First Amendment such that he may present a facial vagueness challenge without first demonstrating the statue was vague as to his conduct. We do not agree. Although the First Amendment generally protects the free communication and receipt of ideas, opinions and information, it allows the State to proscribe communicative conduct that invades the substantial privacy interests of another "in an essentially intolerable manner." *See Scott v. State*, 322 S.W.3d at 670 (holding section of telephone harassment statute prohibiting repeated ringing or repeated telephone communications

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *Scott*, 322 S.W.3d at 670–71. Appellant complains the statute is vague as applied to him because he did not know the definition of "harassing manner" and the statute prohibited communications with Laura about money, their child, and his attempts to dissuade his wife from divorcing him. Contrary to appellant's contention, however, section 25.07(a)(2)(A) did not prohibit appellant from communicating with Laura on any subject. Rather, using the ordinary dictionary definition above, it merely prohibited intentional or knowing communications that persistently disturbed, bothered continually, or pestered Laura.

Although appellant argued in the trial court and on appeal that he had no intention to harass Laura and did not know his communications with her after the protective order was entered would be deemed "in a . . . harassing manner," the evidence belies his contentions. Appellant continued to text and call Laura even after she told him it would be best to communicate by email. He made at least eight unsolicited communications to Laura in the three-week period following the issuance of the protective order and six of those communications occurred between December 5 and December 8, after he was served with divorce papers. Moreover, in his December 5 email, appellant acknowledged he had been prohibited from professing his love to Laura, but was doing so anyway. "The vagueness doctrine is not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Webb v. State*, 991 S.W.2d 408, 417 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). When measured by common understanding and practice, the statutory language of section 25.07(a)(2)(A) is not

---

"in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" did not implicate conduct protected by First Amendment).

unconstitutionally vague as applied to appellant's conduct. The statute clearly protects Laura from appellant's repeated, unsolicited, and unwelcome communications in which he professes his love and begs her not to divorce him. Accordingly, the statute was not unconstitutionally vague as applied to appellant's conduct. In light of our resolution of appellant's as applied vagueness challenge, any facial vagueness challenge necessarily fails. *See Village of Hoffman Estates,* 455 U.S. at 495; *Scott*, 322 S.W.3d at 670–71.

To the extent appellant complains under his first issue that the statute also violates his freedom of speech and freedom of religion rights under the United States and Texas Constitutions, he has waived these complaints by inadequate briefing. *See* TEX. R. APP. P. 38.1(i). Apart from a general reference to the First Amendment of the United States Constitution and sections six and eight of Article I of the Texas Constitution, appellant has provided no legal analysis or discussion with appropriate legal authority explaining how the statute violates these rights. Because appellant's conclusory statement asserting violations of these constitutional provisions is unsupported by analysis and relevant legal citations, he has not complied with appellate briefing requirements. *See* TEX. R. APP. P. 38.1(i). Accordingly, these complaints present nothing for review. *See Morehead v. State*, 807 S.W.2d 577, 579 n.1 (Tex. Crim. App. 1991).

In his second issue, appellant challenges the sufficiency of the evidence supporting his conviction. In reviewing for legal sufficiency, we must determine whether any reasonable fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). We review all the evidence in the light most favorable to the verdict, giving deference to the fact finder's responsibility to weigh evidence, resolve conflicting testimony, and draw reasonable inferences from basic facts to ultimate facts. *See id.* We also determine

"whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.*

Under section 25.07(a)(2)(A), a person can be convicted for violating a protective order if the evidence establishes beyond a reasonable doubt that he knowingly or intentionally communicated directly with a protected individual in a threatening or harassing manner. TEX. PENAL CODE ANN. § 25.07 (a)(2)(A). When analyzing for legal sufficiency, non-technical terms that are not legislatively defined are to be understood as ordinary usage allows, and jurors may give them any meaning which is acceptable in common parlance unless the term has a technical meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000).

After reviewing the record, we find the evidence legally sufficient to support appellant's conviction. During the three-week period at issue, appellant initiated multiple emails and texts as well as several telephone calls to Laura that were filled with unsolicited declarations of love and poetry, pleas for reconciliation, as well as arguments to support his reconciliation attempt. Many of the communications initiated by appellant focused exclusively on how he viewed their relationship and what he wanted, urging Laura to see things from his point of view. At no time did Laura express a desire to reconcile with him, or otherwise encourage him to send communications regarding his feelings for her or his desire that she not proceed with the divorce. Instead, her texts and emails to him completely ignored his declarations and pleas. After she served appellant with divorce papers, his emails persisted and intensified. In his December 5 email, appellant acknowledges that he has been prohibited from professing his love to Laura, but he nevertheless continues to send her an email each of the next three days urging her not to

divorce him. When she did not respond to these pleas, he initiated an email to church members soliciting their help in communicating his message to Laura.

Laura testified that she thought appellant's repeated communications with her were harassing because the volume, frequency, and length of the emails, together with the language he used "made me feel like I was being coerced or twisting my arm . . . it didn't make me feel comfortable at all." Based on the evidence before it, the jury could have rationally found that appellant intentionally or knowingly communicated directly with Laura in a harassing manner in that he made repeated telephone calls and sent repeated text messages and emails to her in violation of the protective order. We resolve appellant's second issue against him.

In his third issue, appellant complains about the trial court's admission into evidence of the email appellant sent to the church members soliciting their help to stop the divorce and save his marriage to Laura. He asserts that because the email was not a direct communication to Laura, it was irrelevant. He further argues that the email was more prejudicial than probative under Texas Rule of Evidence 403 because it confused the jury about the elements of the crime, allowing them to convict appellant based on an email that was not prohibited by the protective order.

We review the trial court's evidentiary rulings for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the ruling. *See id.* Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). Accordingly, appellant's intent may be inferred from his words, actions, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Here, the email appellant sent to numerous church members after Laura ignored his previous five emails begging her not to divorce him is relevant to appellant's intent with respect

–11–

to his communications with Laura. Shortly after appellant was served with divorce papers, he sent her emails with increased frequency that repeatedly asked her not to divorce him, despite the fact he had no indication that Laura had any reservations about proceeding with the divorce. Contrary to appellant's contention that he was merely trying to express his love and save his marriage, the email to the church members suggests that rather than accept and respect Laura's decision, appellant was communicating with her in an effort to strong-arm her into changing her mind about the divorce. When his goal was not achieved by direct communication with Laura, he emailed church members to assist him in persuading Laura to drop the divorce. As such, the email to church members is evidence of appellant's intent with respect to his direct communications with Laura. (Laura testified church members did not contact her to do what appellant requested but church friends provided the email to her). There is nothing in the record to support appellant's contention that the jury was confused by the admission. Appellant's closing argument made clear appellant did not send Laura the email to the church members. Moreover, the jury charge made clear appellant had to communicate directly with Laura in a harassing manner to be convicted. Accordingly, we conclude the trial court did not abuse its discretion in admitting appellant's email to the church members. We resolve appellant's third issue against him.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131329F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAUL HENRI WAGNER, Appellant

No. 05-13-01329-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 10, Dallas County, Texas
Trial Court Cause No. MA-1114870L
Opinion delivered by Justice Evans, Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 5th day of May, 2015.