PD-0623-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/26/2015 3:09:11 PM
Accepted 5/27/2015 2:00:49 PM
ABEL ACOSTA
CLERK

# No. _____

In The
**COURT OF CRIMINAL APPEALS OF TEXAS**
Austin, Texas

---

**Elisa Merrill Wilson,** *Petitioner*

**v.**

**State of Texas,** *Respondent*

---

On Appeal from County Court at Law No. 2 Fort Bend County, Texas
and from the First Court of Appeals, Houston, Texas

Trial Court Case No. 10CCR149142
Court of Appeals Case No. 01-11-01125-CR

---

# PETITION FOR DISCRETIONARY REVIEW

---

FILED IN
COURT OF CRIMINAL APPEALS

May 27, 2015

ABEL ACOSTA, CLERK

Timothy A. Hootman
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548
713.583.9523 (f)
Email: thootman2000@yahoo.com

ATTORNEY FOR PETITIONER, ELISA
MERRILL WILSON

**Oral argument requested**

1

# Identity Of Judges, Parties, and Counsel

The following judges, parties, and counsel are associated with this case in the trial court and on appeal:

| | |
|---|---|
| **Trial judge:** | Hon. Jeffrey A. McMeans<br>Judge, County Court at Law No. 2<br>301 Jackson St<br>Richmond, TX 77469 |
| **Justices from the First Court of Appeals:** | Hon. Sherry Radack, Chief Justice<br>Hon. Jane Bland, Justice<br>Hon. Rebeca A. Huddle, Justice<br>301 Fannin St<br>Houston, TX 77002-2066 |

| | |
|---|---|
| **Defendant/Appellant:** | Elisa Merrill Wilson |
| **Attorney for appellant (in the trial court):** | David R. Bires<br>SBN 02335000<br>J.P. Borgan Chase Bldg<br>712 Main St, Ste 2400<br>Houston, TX 77002 |
| **Attorney for appellant (in the court of appeal and the Court of Criminal Appeals):** | Timothy A. Hootman<br>SBN 09965450<br>2402 Pease St<br>Houston, TX 77003 |

| | |
|---|---|
| **Appellee:** | The State of Texas |
| **Attorneys for appellee (in the trial court):** | John J. Harrity III<br>District Attorney for Fort Bend County, TX<br>Laurel Ellisor<br>Assistant District Attorney<br>301 Jackson St, Rm 101<br>Richmond, TX 77469 |
| **Attorneys for appellee (in the court of appeals** | Abdul Faruki<br>Assistant District Attorney |

**and the Court of Criminal Appeals):**    301 Jackson St, Rm 101
Richmond, TX 77469

Lisa C. McMinn
State Prosecuting Attorney
John R. Messinger
Assistant State's Attorney
P.O. Box 13046
Austin, TX 78711

# Table Of Contents

IDENTITY OF JUDGES, PARTIES, AND COUNSEL.................................................... 2

TABLE OF CONTENTS........................................................................... 4

INDEX OF AUTHORITIES.........................................................................5

STATEMENT REGARDING ORAL ARGUMENT ....................................................... 6

STATEMENT OF CASE ...........................................................................8

STATEMENT OF PROCEDURAL HISTORY .............................................................9

QUESTIONS PRESENTED FOR REVIEW..............................................................10

ARGUMENT ..................................................................................11

    I.    **Introduction.** .......................................................................11

    II.  **Texas preservation-of-error rules.** ................................... 16

    III. **Federal due process and the Texas preservation-of-error rules.** ....................................................... 18

    IV. **Vagueness and overbreadth.**............................................. 22

PRAYER .....................................................................................33

CERTIFICATE OF WORD COUNT................................................................. 35

CERTIFICATE OF SERVICE .....................................................................35

APPENDIX.................................... Memorandum Opinion on Remand from the First Court of Appeals

4

# INDEX OF AUTHORITIES

***Texas cases:***

*Ex parte Halstead*, 147 Tex. Crim. 453, 182 S.W.2d 479 (1944)..................25

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009).........10, 14, 16, 17

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996)..........................27, 32

*May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989)................................25

*Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000)............................................... 21

*Rodriguez v. State*, 93 S.W.3d 60 (Tex. Crim. App. 2002).........................24

*Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010).......................*passim*

*State v. Wilson*, 448 S.W.3d 418 (Tex. Crim. App. 2014).................... *passim*

*Wilson v. State*, 431 S.W.3d 92 (Tex. App.—Houston [1st Dist.] 2013).........11

***U.S. Supreme Court cases:***

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)..............................27

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)........................................ 27, 28

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)..................................28

*Curtis Pub. Co. v. Butts*, 368 U.S. 130 (1967)...........................................19

*Freytag v. Comm'r*, 501 U.S. 868 (1991).....................................................19

*Grayned v. Rockford*, 408 U.S. 104 (1972).......................................... 25, 26

*New York v. Ferber*, 458 U.S. 747 (1982).................................................... 27

*Spence v. Washington*, 418 U.S. 405 (1974)................................................30

*United States v. Olano*, 507 U.S. 725 (1993)..............................................19

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)..........................................................................................................25

*Virginia v. Hicks*, 539 U.S. 113 (2003)........................................................26

***Federal court of appeals cases:***

*Gormley v. Director, Conn. State Dep't of Prob.*, 632 F.2d 938 (2nd Cir. 1980)..............................................................................29

*Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983)..............................................27

*Thorne v. Bailey*, 846 F.2d 241 (4th Cir. 1988)............................................28

**Out-of-state cases:**

*McKillop v. State*, 857 P.3d 358 (Alaska Ct. App. 1993)............................30

*State v. Thorne*, 333 S.E.2d 817 (W. Va. 1985).............................................31

# STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument. This Court has given conflicting messages as to when an argument may be raised for the first time on appeal. Whether or if application of waiver and forfeiture rules applies when a subsequent re-interpretation of a statute has caused a party to "waive" an argument, or whether in those situations such rules violate due process, raise significant questions that warrant oral argument, especially in light of the complexities of working through these questions under the circumstances of this case.

# STATEMENT OF THE CASE

A jury found appellant guilty of telephone harassment. The court of appeals reversed and acquitted. This Court reversed and remanded to have the remaining issues addressed that had been raised in appellant's brief in the court of appeals. On remand, the court of appeals affirmed the conviction.

# STATEMENT OF PROCEDURAL HISTORY

On May 9, 2013, the First Court of Appeals acquitted appellant in a published opinion. *Wilson v. State*, 431 S.W.3d 92 (Tex. App.—Houston [1st Dist.] 2013). This Court reversed and remanded to have the remaining issues that had been raised in appellant's brief in the court of appeals addressed. *State v. Wilson*, 448 S.W.3d 418 (Tex. Crim. App. 2014).

On March 31, 2015, the First Court of Appeals affirmed appellant's conviction with an unpublished opinion. *Wilson v. State*, No. 01-11-01125-CR (Tex. App.—Houston [1st Dist.] 2015, March 31, 2015).

On April 14, 2015, appellant filed a motion for rehearing which was denied on April 30, 2015.

# QUESTIONS PRESENTED FOR REVIEW

### Question one:

Does *Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) bar Wilson from arguing for the first time, after the court of appeals and this Court have issued opinions, that the harassment statute is vague and overbroad in violation of the First and Fourteenth Amendment to the U.S. Constitution?

### Question two:

Does application of Texas's preservation-of-error rules to bar Wilson from raising her vagueness and overbreadth challenges to the harassment statute after the court of appeals and this Court have issued opinions—in a supplemental brief on remand—violate federal due process under the Fifth and Fourteenth Amendments of the U.S. Constitution?

### Question three:

Is section 42.07(a)(4) of the harassment statute as re-interpreted in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) vague and overbroad on its face?

### Question four:

Is section 42.07(a)(4) of the harassment statute as re-interpreted in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) vague and overbroad as applied to the facts developed in the trial court regarding appellant's conviction?

# ARGUMENT

## I. Introduction.

Wilson was convicted of the portion of the telephone harassment statute that says:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he ... makes repeated telephone communications ... in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.
> TEX. PENAL CODE § 42.07(a)(4).

At the time of Wilson's conviction, the relevant authority interpreting this section was *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), which held that "repeated telephone communications" meant "more than one telephone call in close enough proximity to properly be termed a single episode". *Id.* at 669 n.12. Based on the *Scott* interpretation, Wilson argued in the court of appeals that there was legally insufficient evidence to support her conviction because the telephone calls in her case were more than thirty days apart. *Wilson v. State*, 431 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2013) *rev'd*, *State v. Wilson*, 448 S.W.3d 418 (Tex. Crim. App. 2014). The court of appeals, also relying on the *Scott* interpretation, agreed with Wilson and held that because the calls were not within a thirty-day

11

period of each other there was legally insufficient evidence to sustain the conviction. *Id.* at 96 (*citing Scott*).

On the State's petition for discretionary review, this Court reversed the court of appeals' judgment of acquittal by abrogating *Scott* and re-interpreting the meaning of "repeated telephone communications" such that (1) the phrase repeated telephone communications no longer requires the communications to occur within a certain time frame in relation to one another, and (2) "a facially legitimate reason for the communication does not negate per se an element of the statute." *Wilson*, 448 S.W.3d at 420. On rehearing in this Court, Wilson attempted to raise for the first time on appeal the vagueness and overbreadth of the portion of the statute that she was convicted of violating by arguing:

> Under this Court's prior interpretation of the telephonic harassment statute there was no need for Wilson to challenge the vagueness or overbreath of the statute because, under *Scott*, there was legally insufficient evidence to sustain Wilson's conviction based on the evidence presented at trial. Because of this, Wilson pursued her defense in the trial court and on appeal on the basis of insufficiency, without making the unnecessary and, under *Scott*, unviable argument that the statute was vague or subject to an overbreath challenge. The court of appeals agreed with Wilson that the evidence was insufficient under *Scott* and

> acquitted. This Court, by reinterpreting the language used in the statute, has created a vagueness and overbreath problem with the statute, which must now be raised by appellant—under the *Scott* interpretation of the statute there was no clear vagueness or overbreath problem, but under the *Wilson* interpretation there is. Namely, that the statute as interpreted by this Court in its opinion reversing the court of appeals' decision to acquit Wilson does not require the telephonic communications to occur within a certain time frame in relation to one another and that a facially legitimate reason for the communications do not negate an element of the statute. This interpretation causes the statute to be vague and overbroad, according to Supreme Court jurisprudence.

*See* Aplt. M. Rhr. at 4-5 filed in the Court of Criminal Appeals. The majority of the Court denied the motion for rehearing without opinion, but Justice Alcala wrote an opinion in dissent (joined by Justices Johnson and Cochran) noting that, "Because there had been no reason to challenge the vagueness or overbreadth of the telephone harassment statute as this Court had interpreted its requirements in *Scott*, appellant had no reason to assert that challenge until this Court's reformulation of the law in this case." *Wilson*, 448 S.W.3d at 431. Thus, this Court did not reach the merits of Wilson's vagueness and overbreadth argument.

13

On remand in the court of appeals, Wilson filed a motion for leave to file a supplemental brief, which was granted. In Wilson's supplemental brief she argued that (1) *Karenev v. State* does not bar her from raising for the first time on appeal and after remand that the harassment statute as re-interpreted by *Wilson* is vague or overbroad, (2) the statute is vague and overbroad as re-interpreted by *Wilson* on its face, and (3) the statute is vague and overbroad as re-interpreted by *Wilson* as applied.

The court of appeals affirmed the conviction and wrote in its memorandum opinion that "well-established error preservation rules requiring that such complaints [*e.g.*, the facial challenge] be made both in the trial court and in the initial briefing on appeal preclude our consideration of these arguments on remand" and therefore "we hold that Wilson waived her facial challenge and thus decline to consider it, because it was first raised in supplemental briefing on remand." Memo. Op. at 22, 24. Therefore, Wilson filed a motion for rehearing arguing:

> If it is true that Texas law results in a waiver of the facial challenge complaint in this case by not having raised it before *Scott* was abrogated by *Wilson*, then those Texas waiver rules violate appellant's right to due process under the fifth and fourteenth amendments of

14

the federal constitution. That is, state preservation rules that are so harsh as to violate federal due process are void under the supremacy clause.

The motion for rehearing was denied without opinion.

Thus, two procedural and two substantive questions are presented: (1) Do Texas preservation-of-error rules bar Wilson from raising the vagueness and overbreadth challenges to the *Wilson* re-interpretation of section 42.07(a)(4) of the harassment statute? If so, (2) do those rules, under the circumstances of this case, violate Wilson's right to federal due process? (3) Does the *Wilson* re-interpretation render section 42.07(a)(4) vague and overbroad on its face? And, (4) does the *Wilson* re-interpretation cause section 42.07(a)(4) to be vague and overbroad as applied?

## II. Texas preservation-of-error rules.

> **Question one:**
>
> Does *Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) bar Wilson from arguing for the first time, after the court of appeals and this Court have issued opinions, that the harassment statute is vague and overbroad in violation of the First and Fourteenth Amendment to the U.S. Constitution?

Generally, a vagueness and overbreadth challenge may not be raised for the first time on appeal. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). This is because the "State and the trial court should not be required to anticipate that a statute may later be held to be unconstitutional" absent an initial challenge in the trial court. *Id.* This rationale applies to Wilson in this case who should not be required to have anticipated that section 42.07(a)(4) of the harassment statute would be re-interpreted by this Court as a prerequisite to challenging the yet-to-exist re-interpretation later on. If such a rule were taken seriously by appellate lawyers, anticipatory preservation steps inundate appellate records and briefs in a very confusing and inefficient way. This petition should be granted to clarify whether that really is the state of Texas preservation-of-error

16

law in the context of significant statutory re-interpretations by this Court. If is suggested that this is **not** the law in Texas as evidenced by *Karenev* and Justice Alcala's dissent regarding denial of rehearing in *Wilson*.

This same rationale applies to Wilson in this case; namely, she should not be required to anticipate that a statute will be re-interpreted by this Court barring her from raising the constitutional infirmities of the new interpretation because she did not raise the challenge for the first time in the trial court. The concurring opinion in *Karenev* by Justice Cochran (joined by Justices Price, Womack and Johnson) makes clear that in the appropriate circumstance, a vagueness and overbreadth challenges can be raised for the first time on appeal. *Id.* at 435-41. This case presents such an appropriate case, and therefore, the court of appeals should have addressed the vagueness and overbreadth challenges presented in Wilson's supplemental brief on remand. In short, Wilson should be allowed to raise the vagueness and overbreadth challenges for the first time on appeal, and in the court of appeals, and this Court should grant this petition because the court of appeals' holding on remand that Wilson

"waived her facial challenge" is in conflict with *Karenev* and Justice

Alcala's statement in her dissenting opinion in *Wilson.*

## III. Federal due process and the Texas preservation-of-error rules.

> ***Question two:***
>
> Does application of Texas's preservation-of-error rules to bar Wilson from raising her vagueness and overbreadth challenges to the harassment statute after the court of appeals and this Court have issued opinions—in a supplemental brief on remand—violate federal due process under the Fifth and Fourteenth Amendments of the U.S. Constitution?

It would make no sense for Wilson to have argued in her first

brief on appeal that "under *Scott* there is insufficient evidence, but

just in case *Scott* is overruled by way of a possible future

reinterpretation of section 42.07(a)(2) by the Court of Criminal

Appeals different from *Scott* thus allowing for the record in this case

to contain sufficient evidence, that reinterpretation gives rise to a

facial challenge which is being raised now." This speculative

argument is what Wilson would have had to lodge under the court of

appeals' failure-to-preserve holding if she wanted to have the merits

18

addressed after *Scott* was abrogated by *Wilson*—of course it could not have been addressed before *Scott* was abrogated because the facial challenge alone arose after *Scott* was abrogated. If the court of appeals is correct and this truly is the state of Texas preservation rules, then they violate federal due process in the procedural context of this case.

Of course, an objection must be raised timely, meaning when the opportunity first arises. Timeliness problems are presented when a right or rule is first created after trial but before resolution of a case on appeal. In these situations, federal due process requires that a party be allowed to raise the objection for the first time on appeal. *See Curtis Pub. Co. v. Butts*, 368 U.S. 130 (1967). It is illogical and unfair to require an objection before the problem even exists. Texas preservation rules to the contrary violate federal due process.

Whereas waiver involves the "intentional relinquishment of a known right," forfeiture implies the "failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also Freytag v. Comm'r*, 501 U.S. 868, 895 n.2 (1991). In this case, this distinction is important because, clearly, Wilson did not waive the facial challenge complaint. Thus, this court of appeals'

conclusion that the error was not properly preserved under Texas preservation law turns on the timeliness question in the forfeiture context.

Texas preservation of error rules require that an objection be made when the opportunity first arises. If the rule in Texas is that a party must object to an adverse law that does not even exist as a prerequisite to challenging the yet-to-exist law later, then application of that Texas rule to this case violates federal due process because it is unfair to impose such an impossible burden on a party. Such a burden violates basic notions of rule-of-law—if there is a rule, a party is entitled to rely on it without being required to make futuristic ascertainments about the rule's being abrogated. *See* LON L. FULLER, THE MORALITY OF LAW 106 (rev. ed. 1969). Perhaps the most basic element underlying all of the criteria of the rule of law is that human actors can fairly comply with the law. If human actors cannot fairly comply with the law, not only does that particular law fail to obey the rule of law, but it also calls into question the entire enterprise of law as a set of rules that can and should govern human conduct. For Texas preservation-of-error rules to be so esoteric and Byzantine to require inclusion of predictions of how a statute will be reinterpreted

violates fundamental notions of rule of law and therefore federal due process.

Federal constitutional law in this regard states that when deciding whether a party has waived its federal constitutional claims in state court, courts look first to procedural rules that govern when a party must raise those claims and then consider whether those procedural rules are adequate as a matter of federal substantive constitutional law to protect the constitutional interests at stake. *Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000). Moreover, regarding first amendment issues, as in this case, waiver must be shown by clear and compelling circumstances. *Id.* A court has a heightened duty to protect fundamental rights, such as those protected by the first amendment of the federal constitution. Application of state preservation of error rules so as to avoid reaching the merits of a fundamental rights issue can itself be a violation of federal due process. Application of forfeiture or waiver to Wilson in this case, where she raised the facial challenge to TEX. PENAL CODE ANN. § 42.07(a)(4) when the opportunity first arose, violates Wilson's right to due process of law as protected by the fifth and fourteenth amendment of the federal constitution. Therefore, if it is true that

21

Texas law is as the court of appeals held that Wilson did not preserve the constitutional issues she seeks to raise, that Texas law violates federal due process. These important, and fundamental, questions should be addressed by this Court via this petition for discretionary review.

## IV. Vagueness and overbreadth.

> ### *Question three:*
> Is section 42.07(a)(4) of the harassment statute as re-interpreted in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) vague and overbroad on its face?
>
> ### *Question four:*
> Is section 42.07(a)(4) the harassment statute as re-interpreted in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) vague and overbroad as applied to the facts developed in the trial court regarding appellant's conviction?

Subsection (a)(4) of the harassment statute, as re-interpreted by this Court in *Wilson*, is void for vagueness and overbreadth in violation of the First and Fourteenth Amendments to the United States Constitution. That is, the statute is "facially" unconstitutional without reference to the particular facts presented in the trial court

22

record of this case; the statute is "as applied" unconstitutional because, as re-interpreted by this Court in *Wilson*, it is inherently vague in reference to Wilson's conduct. More specifically, as interpreted, subsection (a)(4)'s phrase "causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" is unconstitutionally vague because it is impossible for Wilson or any other citizen to know what is prohibited. This Court has concluded in *Wilson* that the legislature intended by the statute (1) that the phrase repeated telephone communications does not require the communications to occur within a certain time frame in relation to one another, and (2) that a facially legitimate reason for the communication does not negate per se an element of the statute. *See Wilson.* This broadened re-interpretation from what was prohibited under the *Scott* interpretation makes it impossible to know **when** calls beyond one call and **what** content of a telephone call are tantamount to criminal conduct, thereby implicating vagueness and overbreadth problems "facially" with respect to all citizens and "as

23

applied" with respect to the specific conduct presented in the record of this case.

When reviewing a challenge to the constitutionality of a statute, it is presumed that the statute is valid and that the legislature acted reasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Here, it should be kept in mind that the in *Scott* and *Wilson* this Court was interpreting the legislative intent as to what the legislature meant when using the words employed in the harassment statute. That is, the Court was interpreting the statute; it was not considering whether the statute violated the federal constitution. Interestingly enough, the new and broad *Wilson* re-interpretation gives rise to the question of whether the statute is overly vague and overly broad, a question that was not addressed by this Court. Now that this Court has clarified what the legislature intended by use of the words contained in the statute, the constitutional questions are ripe for consideration. And, to repeat, as a starting point, it is presumed that the statute is constitutional. *Rodriguez*, 93 S.W.3d at 69.

Additionally, if First Amendment freedoms are ***not*** implicated, Wilson must show that the statute is unconstitutional as applied to

her conduct. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). On the other hand, if the statute's language is capable of reaching protected speech or otherwise threatens to inhibit the exercise of constitutional rights, a stricter vagueness standard applies than when the statute regulates unprotected conduct. *Id.* at 497. That is, when speech is at stake, Wilson is allowed to raise a facial vagueness challenge without showing the statute is vague as applied to her conduct because the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights. *Id.*

A legislative enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *May v. State*, 765 S.W.2d 438, 439 (Tex. Crim. App. 1989); *see also Ex parte Halstead*, 147 Tex. Crim. 453, 182 S.W.2d 479, 482 (1944). Although overbreadth and vagueness challenges often appear in tandem, they are distinct concepts. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but ... includes within its scope activities which are protected by the First Amendment." John E. Novak, et. al., *Constitutional Law*, ch. 18, § III at 868 (2d ed. 1983); *see also*

*Virginia v. Hicks*, 539 U.S. 113, 123 S.Ct. 2191, 2196 (2003). In contrast, a statute is unconstitutionally vague if it fails to give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or if it allows for arbitrary and discriminatory enforcement by failing to provide an objective standard for those who are charged with enforcing or applying the law. *Grayned*, 408 U.S. at 108.

The U.S. Supreme Court's *Grayned* opinion elaborates on the vagueness problem:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person or ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone that if the

> boundaries of the forbidden areas are clearly marked.

*Id.* at 108-09 (quotations omitted); *see also Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996); *Kramer v. Price*, 712 F.2d 174, 176-77 (5th Cir. 1983) (case striking down pre-1983 version of the Texas harassment statute), *vacated on reh'g*, 716 F.2d 284 (1983), *trial court aff'd after statute repealed*, 723 F.2d 1164 (1984).

On the other hand, the purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, "may well refrain from exercising their rights for fear of criminal sanctions susceptible of application to protected expression." *New York v. Ferber*, 458 U.S. 747, 768 (1982) (quotation omitted). While the Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere," *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002), the application of the overbreadth doctrine is "strong medicine" to be employed "only as a last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Thus, "[i]t remains a matter of no little difficulty to determine when a law may properly be held void on its face and when such summary action is inappropriate." *Broadrick*, 413 U.S. at 615 (quotations omitted).

The overbreadth of a statute must be real and substantial, judged in relation to the statute's plainly legitimate sweep. *See Broadrick*, 413 U.S. at 615. The criterion of substantial overbreadth precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner. *See Secretary of State of Md. V. J.H. Munson Co.*, 467 U.S. 947, 964-65 (1984). If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications. *Broadrick*, 413 U.S. at 615-16.

It is well established that "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act … raise[s] no question under that instrument." *Cantwell v. Connecticut*, 310 U.S. 296, 309-10 (1940); *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). As one federal court has stated, " '[p]rohibiting harassment is not prohibiting speech, because harassment is not … protected speech.' " *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988), *quoting State v. Thorne*, 333 S.E.2d 817, 819

(W. Va. 1985) (upholding West Virginia's telephone harassment statute). Such "speech" is more properly termed conduct and is therefore not subject to First Amendment protection. *Thorne*, 846 F.2d at 243 (telephone harassment statute "prohibits conduct and not protected speech"); *Gormley v. Director, Conn. State Dep't of Prob.*, 632 F.2d 938, 941-42 (2nd Cir. 1980) (Connecticut's telephone harassment statute "regulates conduct, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner.").

On the other hand, a telephone call can be, and generally is, speech and not conduct, thereby invoking First Amendment protection. Whether the communications in this case are protected speech versus prohibited conduct is the essential gravamen. The legislative intent as reflected in the statute (according to *Wilson*) moves the line dividing these two concepts significantly, thereby implicating the vagueness and overbreadth problems. That is, under the *Wilson* re-interpretation of what the legislature intended by the statute (1) the phrase repeated telephone communications does not require the communications to occur within a certain time frame in

29

relation to one another, and (2) a facially legitimate reason for the communication does not negate per se an element of the statute.

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, [the U.S. Supreme Court has] asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (*quoting Spence v. Washington*, 418 U.S. 405, 410-11 (1974)).

According to at least one appellate opinion that is in keeping with U.S. Supreme Court admonishments, a telephonic harassment statute is not vague and overly broad if it is written so as "to prohibit telephone calls only when the call has no legitimate communicative purpose—when the caller's speech is devoid of any substantive information and the caller's sole intention is to annoy or harass the recipient." *McKillop v. State*, 857 P.3d 358, 364 (Alaska Ct. App. 1993). The legislative intent regarding the harassment statute (as clarified by *Wilson*) is squarely opposed to this refrain. Under the *Wilson* re-interpretation the "facially legitimate reason for the communication does not negate per se an element of the statute."

30

That is, any call after the first harassing call at any time is subject to criminal liability, even if the content of the second call contains objectively non-harassing substantive content and is made more than thirty days after the first call. Given that this is what the legislature intended by adopting the harassment statute, the vagueness and overbreadth doctrines are violated because from a "facial attack" perspective in is impossible to know what calls are criminal—apparently any calls beyond one are criminal if they are annoying, such as annoying sales calls, political campaign calls, or calls from exes. *See Wilson*, (Keller, P.J., concurring) and (Cochran, J., concurring). And from an "as applied" perspective, appellant's conduct as described in the court of appeals' original opinion was neutral in content and spread out of a relatively long period of time which would be hard are impossible to know is criminal under the statute. First amendment freedoms are implicated because the re-interpretation covers not only calls intended to be harassing speech, which is not protected, but also non-harassing speech that is intended to communicate proper information and ideas. The statute's amazingly broad attempt to define what annoys and alarms people and its failure to specify beyond (1) that the phrase repeated

31

telephone communications does not require the communications to occur within a certain time frame in relation to one another, and (2) that a facially legitimate reason for the communication does not negate per se an element of the statute causes it to be unconstitutionally vague on its face and as applied to the facts of this case. The vagueness of the proscribed conduct described could be reduced, for example, by linking it to more specific conduct, such as a specific time frame between calls, a specific number of calls beyond which is harassing, or facially neutral communications as being beyond the reach of the statute. *See Long*, 931 S.W.2d at 293-94 (examining the Fifth Circuit analysis of the re-1983 Texas harassment statute in *Kramer*).

Finally, it should be noted that for this Court to conclude that the harassment statute is vague and over broad in violation of the First and Fourteenth Amendments to the U.S. Constitution does no offense to the *Wilson* opinion by this Court because there the Court was not confronted with the constitutional challenge, was only focusing on the statutory construction question of what exactly the legislature intended by the words employed in the statute, and therefore was deferring to later courts, such as this Court now or the

32

court of appeals on remand to take the first bite at determining the constitutional infirmities of the statute.

# PRAYER

Petitioner prays that this petition be granted, that briefing on the merits be ordered, and that this case be reversed and the original judgment of acquittal be reinstated, or that the case be remanded to the court of appeals for further consideration.

Respectfully submitted,

/s/Timothy A. Hootman_____
TIMOTHY A. HOOTMAN
SBN 09965450
2402 Pease St
Houston, TX 77003
713.247.9548
713.583.9523 (f)
E-mail: thootman2000@yahoo.com

ATTORNEY FOR PETITIONER

# CERTIFICATE OF WORD COUNT

I hereby certify that, in accordance with Rule 9.4 of the Texas Rules of Appellate Procedure, that the number of words contained in this document are 4,445 according to the computer program used to prepare this document.

Dated: May 26, 2015.

/s/Timothy A. Hootman_____
Timothy A. Hootman

# CERTIFICATE OF SERVICE

I hereby certify that, in accordance with Rule 9.5 of the Texas Rules of Appellate Procedure, I have served the forgoing document upon the following attorneys by electronic service:

John J. Harrity III
Assistant District Attorney
Fort Bend County
301 Jackson St, Rm 101
Richmond, TX 77469

Lisa C. McMinn
John R. Messinger
P.O. Box 13046
Austin, TX 78711

Dated:  May 26, 2015.

/s/Timothy A. Hootman_____
TIMOTHY A. HOOTMAN



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-01125-CR

_____

**ELISA MERRILL WILSON, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 10CCR149142**

---

**MEMORANDUM OPINION**

In 2011, a Fort Bend County jury found Elisa Wilson guilty of telephone harassment, and the trial court assessed punishment of 180 days in jail, probated for 12 months.  *See* TEX. PENAL CODE ANN. § 42.07(a)(4) (West Supp. 2014). Wilson appealed her conviction, raising four issues: (1) that the evidence was

insufficient to support the conviction; (2) that the trial court erred in rejecting Wilson's proffered jury instruction; (3) that the trial court abused its discretion in overruling Wilson's objection to the State's extraneous-offense evidence; and (4) that the trial court abused its discretion in excluding proffered defense evidence. On original submission to this court, we found the evidence insufficient and, as a result, reversed. The Court of Criminal Appeals reversed, holding that evidence that Wilson left six telephone messages for Nicole Bailey over a 10-month period supported the statutory requirement of "repeated telephone calls" and that the benign content, or the facially legitimate purpose, of a telephone call does not legally negate the prohibited intent of the call. The Court of Criminal Appeals remanded the case to this Court for consideration of Wilson's jury-charge and evidentiary complaints. Also, Wilson seeks to raise both facial and as-applied First Amendment challenges to the telephone harassment statute in a supplemental brief filed after remand. We affirm.

## Background

The information against Wilson charged that, "on or about April 6, 2009 thr[ough] March 3, 2010, [Wilson] did then and there, with intent to harass, annoy, alarm, abuse, torment or embarrass Nicole Bailey, make repeated telephone communications to Nicole Bailey in a manner reasonably likely to harass or annoy or alarm or abuse or torment or embarrass or offend the said Nicole Bailey." The

2

jury heard evidence that Wilson left six telephone messages for Bailey, on April 6, 2009, June 11, 2009, August 31, 2009, September 5, 2009, December 23, 2009, and February 5, 2010. In these messages, Wilson:

- said that she saw a dog in her yard that looked like another neighbor's dog and asked Bailey to let them know that the neighbor could come pick it up if they were missing their dog;

- told Bailey that she did not want Bailey to talk to her or approach her in public ever again;

- referred to an incident that occurred on August 30, 2009, in which Wilson followed Bailey through a grocery store screaming at her; Wilson said that she was caught off guard and thought "it was an attack," and stated that she was calling to say she was sorry;

- complained that the work Bailey was having done on her driveway was against the deed restrictions;

- told Bailey that she saw what looked like cement debris from the driveway job that needed to be cleaned up, and that she was asking her "nicely this time"; and

- reminded Bailey that Wilson had surveillance cameras, told Bailey that she could "come pick up her newspaper," and warned Bailey to leave her alone and not "accost" or "harass" her any more.

The content of Wilson's calls was not overtly harassing. For this reason, the State sought to admit evidence of Wilson's various interactions with Bailey and other neighbors over the course of several years.

3

Bailey moved into a Fort Bend County subdivision in 2000. She became acquainted with her neighbors, the Wilsons. After Stephanie Ballard and her husband moved into the neighborhood, they all became friends and socialized frequently. Bailey and Wilson developed a close friendship, which they likened to a "mother-daughter" relationship. Ballard and Bailey, who were nearer each other in age, also became close friends.

The first witness to testify at trial was Stephanie Ballard. In December 2004, the Ballards held a Christmas party, which Bailey and the Wilsons attended. The party took on a celebratory tone until the conversation turned to politics. Ballard's husband said something that upset Wilson. She raised her voice, and, using profanity, left abruptly.

The Ballards' relationship with Wilson became strained. When Wilson set off fireworks in early 2005, Ballard, upset that the noise had awakened her toddler, went outside and confronted Wilson. The next day, she went to Wilson's home to discuss the situation, Wilson invited her into her dining room, went into the kitchen, and returned holding a revolver, which she placed on the table pointing toward Ballard. Then, Wilson told Ballard, "If you would like to talk, let's go ahead and talk." Wilson explained to Ballard her understanding of her legal right to set off fireworks.

After that incident, Wilson set off fireworks with greater frequency, beginning early in the morning and sometimes hourly. Ballard filed a lawsuit in the justice court seeking a "peace bond" to prevent Wilson from setting off fireworks. Bailey agreed to appear at the hearing on Ballard's behalf. The proceeding was unsuccessful; the justice court decided that Wilson was acting within her rights to set off the fireworks.

After the hearing, Wilson became even more hostile to Ballard and turned against Bailey for siding with Ballard. She continued discharging fireworks and made other loud noises with an air horn and her car horn. According to Ballard, Wilson reported child abuse to Children's Protective Services, alleging that Ballard was mentally unstable and that she "was involved in a pornographic pedophile website, that [her] children were being used for a pornographic website of some sort."

In December 2005, the Ballards went to Bailey's home to greet her during the holidays and encountered Wilson, who had also been invited. Wilson leaned toward Ballard's husband to greet him, and he backed away from her. Shortly thereafter, the Ballards received a letter from Wilson's lawyer alleging that Ballard had assaulted Wilson during the incident. Around the same time, the Ballards found nails in their car tires, which they attributed to Wilson. Ballard testified to various other incidents involving Wilson, including the following:

- When Ballard returned home from the hospital with her second child, she noticed a sign in Wilson's window stating: "Never mind the gun. Beware of the neighbor";

- Wilson took pictures of her and her children when they were out in the front yard;

- Wilson filed a false report with Animal Control that the Ballards allowed their dog to run loose in a rabid state.

Ballard explained that she and her family moved from the neighborhood specifically because of Wilson's behavior toward them. After they moved, Ballard testified, Wilson

- came to Ballard's workplace and told Ballard to stop sending her letters, which Ballard had not sent in the first place;

- told Ballard's boss, "Do you know . . . what kind of person you have working for you?," after which she was dismissed from the premises;

- called Ballard twice on her cell phone in January 2010 and talked about incidents with her (and Ballard's former) neighbors, which Ballard found harassing; and

- came up to the Ballards in a restaurant and told them how much she liked their new house, which unnerved Ballard because she had taken lengths to keep Wilson from knowing her new home's location and Wilson's description indicated that she knew where they lived.

The second witness to testify at trial was Tim Simmons, the neighborhood's representative to the homeowner's association. Simmons related his experience in dealing with Wilson in 2001, when the HOA sought easements from residents to build a community fence around the perimeter. Simmons testified that Wilson

agreed to allow the fence to be on her property, but that she resisted signing an easement to the HOA. Simmons also testified to many neighborhood complaints he received about Wilson, including a 2006 complaint from Ballard about Wilson's use of firecrackers, and that the association had received fewer complaints about Ballard and none about Bailey. Simmons recalled that Wilson began screaming at him and his wife at an HOA meeting. In a 2007 election, Wilson's husband ran against Simmons for the neighborhood representative position and lost. The following Halloween, Wilson decorated her fence with a ghoulish figure and put a sign on it with the name "Sam" referring to Simmons's wife.

The third witness was Lisa Decoster, another of Wilson's neighbors. Decoster testified that in 2005 and 2006, she took care of the Wilsons' dog when they were away. She described the Wilson's home as "unusual," because it had pet feces on the floor and multiple law books on the dining room table. Decoster corroborated Simmons's testimony that Wilson was argumentative at HOA meetings. Decoster also testified Wilson taped a letter on neighborhood doors in November 2007 that talked about Stephanie Ballard in a "negative" and "derogatory" way and had nothing to do with the ongoing HOA election. According to Decoster, Wilson pointed out Bailey's home to her and told her that that Bailey made pornography videos and was a drug dealer.

The first day of trial closed with testimony from Joan Hendricks, another neighbor. Like Ballard and Bailey, Hendricks had been friends with Wilson but was no longer. Hendricks buttressed previous testimony concerning Wilson's behavior, including her propensity to set off fireworks and make other loud noises, her animosity toward Simmons's wife, problems with Wilson's behavior raised at HOA meetings, and Wilson's false assault allegations against Ballard's husband. Hendricks recounted that her friendship with Wilson ended in late 2008. Hendricks had watched the Wilsons' home when they were out of town, and, when the Wilsons returned, Wilson made a police report falsely alleging that Hendricks's daughter had taken Wilson's car for a joyride. Hendricks told the jury that Wilson would throw firecrackers at her husband when he was out or at their cars in the driveway. She also described an incident where she saw Wilson walking in the street with a large kitchen knife, which, Wilson told her, was to protect herself against loose dogs.

Enrique Ozuna, who married Nicole Bailey in 2011, testified the following morning. He explained that he first encountered Wilson while at the grocery store with Bailey and that Wilson had screamed at them and accused them of being involved in prostitution.

Bailey testified next. She described her circumstances when she moved into the neighborhood and how she became friends with Wilson. She recounted a trip

8

that she took with Wilson to California following the death of Wilson's father, and that Bailey was taken aback at Wilson's confrontations with her former stepmother, whom Wilson accused of having murdered him, and area law enforcement.

Bailey explained that her friendship with Wilson ended when she testified on behalf of the Ballards at the peace bond proceeding. Wilson sued Bailey for negligence under her homeowner's insurance policy based on the December 2005 incident involving Ballard's husband.

Bailey testified that she sent letters to Wilson and her lawyer in April 2006 asking Wilson to stop calling her. According to Bailey, three CPS complaints were made concerning Ballard's children and included allegations that Bailey was using the children for internet pornography. Bailey also described Wilson's 2008 Halloween decorations and the reference to Simmons's wife. According to Bailey, Wilson also harassed her by calling the police and feigning concern that Bailey was suicidal, which caused the police to visit Bailey's home. Bailey explained the situation to the police, and the police instructed Wilson to stop communicating with Bailey. Wilson retaliated by throwing dog feces into Bailey's yard and throwing fireworks at her car.

Bailey testified to the details of the messages that Bailey left on her telephone answering machine on six occasions—April 6, 2009; June 11, 2009; August 31, 2009; September 5, 2009; December 23, 2009; and February 5, 2010.

Officer Stevenson with the Fort Bend County Sheriff's Department testified about his investigation of the harassment complaint made by Ballard. He learned of Wilson's treatment of Bailey in the course of that investigation, and he recorded Bailey's statement to serve as the basis for her harassment complaint.

## Discussion

### I.    Charge Error

During the charge conference, Wilson asked the trial court to include her proposed definition for "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode." The trial court refused the instruction which, Wilson claims, was error.

The trial court must give the jury a written charge that sets forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). We review a claim of jury-charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985), which first requires us to determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). Where, as here, the appellant has properly preserved a claim of

charge error by an objection or request for instruction, we must reverse if the error is calculated to injure the defendant's rights, that is, if there was "some harm." *Treviño v. State*, 100 S.W.3d 232, 242 (Tex. Crim. App. 2003).

The Court of Criminal Appeals disavowed our reliance on the proffered instruction in overruling Wilson's legal sufficiency challenge. *See State v. Wilson*, 448 S.W.3d 418, 422–23 (Tex. Crim. App. 2014). In the context of Wilson's charge complaint, we look to whether the instruction properly set forth the law applicable to the case.

The Court of Criminal Appeals held that the trial court erred in submitting an instruction purporting to define a statutorily undefined term in *Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012). The defendant was charged with DWI under section 49.04 of the Texas Penal Code, which provides that "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a), *quoted in Kirsch*, 357 S.W.3d at 649–50. In that case, the defendant objected to the inclusion in the charge of the definition of "operate" as "to exert personal effort to cause the vehicle to function."

The Court looked to the Code Construction Act for guidance, which provides that statutorily undefined words and phrases shall be "construed according to the rules of grammar and common usage." *Kirsch*, 357 S.W.3d at 650 (quoting TEX. GOV'T CODE ANN. § 311.011). Words that have a technical or

11

particular legal meaning may require definition in the charge, but common terms that have not acquired a technical meaning and may be interpreted according to their common usage need not be defined. *Id.*; *see Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (explaining that jurors should be provided uniform definition of statutorily undefined terms like "arrest," which have acquired precise legal meaning).

The Court classified "operate" as a common term subject to interpretation according to its common usage, observing that "nothing in our case law suggests that a risk exists that jurors may arbitrarily apply an inaccurate definition to the term 'operate' or that an express definition is required to assure a fair understanding of the evidence." *Kirsch*, 357 S.W.3d at 650. It concluded that, "[a]lthough the definition set forth in the charge is an appropriate definition for an appellate court to apply in assessing the sufficiency of the evidence to support the 'operate' element, instructing the jurors as to that definition in this case impermissibly guided their understanding of the term" and improperly focused the jury on certain evidence, making it an improper comment on its weight. *See id.* at 652.

In this case, the Court of Criminal Appeals abrogated earlier caselaw and held that the term "repeated" in the telephone harassment statute "simply speaks in terms of the number of telephone communications, it does not attempt to define the

12

required frequency of the communications or temporal proximity of one communication to another." *Wilson*, 448 S.W.3d at 424. As a common term, the jury was entitled to rely on its understanding of "repeated." *See id.* Thus, similar to the challenged definition in *Kirsch*, the proffered definition would have impermissibly confined the jury's understanding of the term and improperly focused them on the frequency of the calls and the length of time between them, constituting an improper comment on the weight of the evidence. Accordingly, we hold that the trial court correctly rejected the proffered definition. *See Kirsch,* 357 S.W.3d at 652.

## II.    Evidentiary Complaints

### A.    Standard of review

We review the trial court's evidentiary rulings for abuse of discretion. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990). A trial court abuses its discretion if its decision is outside the zone of reasonable disagreement or if it acts without reference to guiding rules or principles. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 391. If the ruling was correct under any theory of law applicable to the case, we must uphold the judgment. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

13

## B.     Admission of extraneous-act evidence

Wilson challenges the trial court's admission of evidence of many incidents demonstrating her problematic and deteriorating behavior in the neighborhood toward various neighbors over a span of several years.  Wilson objected to the evidence under Texas Rules of Evidence 403 and 404(b) before and during trial and received running objections to the State's use of the evidence throughout the trial, preserving her challenge for appellate review.  *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citing TEX. R. APP. P. 33.1(a)(1)(A)).

Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).  The Supreme Court of the United States has explained that

> Rule 404(b) is rooted in the common-law tradition of disallowing the prosecution for using any evidence of a defendant's evil character to establish probability of his guilt. . . .  The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."

*Michelson v. United States*, 335 U.S. 469, 475–76, 69 S. Ct. 213, 218 (1948), *quoted in Old Chief v. United States*, 519 U.S. 172, 182, 117 S. Ct. 644, 650–51

(1997).  Rule 404(b) further provides that evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  TEX. R. EVID. 404(b); *see Old Chief*, 519 U.S. at 187, 117 S. Ct. at 653.  For purposes of justifying the admission of extraneous-offense evidence, intent is a contested issue if the required intent for the primary offense cannot be inferred from the act itself or if the defendant presents evidence to rebut the inference that the required intent existed.  *Caro v. State*, 771 S.W.2d 610, 617 (Tex. App.—Dallas 1989, no pet.); *McGee v. State,* 725 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no pet.).

Wilson complains that the extraneous-offense evidence was inadmissible character-conformity evidence that labeled Wilson as a neighborhood troublemaker who should be convicted for her other bad behavior even if the telephone calls themselves were not harassing in nature.  The State, on the other hand, argues that the extraneous-offense evidence was relevant to prove Wilson's intent to harass—an essential element of the offense—even if the calls otherwise seemed infrequent and innocuous.

In the first appeal, the Court of Criminal Appeals observed that the surrounding facts and circumstances are relevant to the issue of intent.  In her concurring opinion in this case, Justice Cochran explained that

> A telephone harassment common plan or scheme might take the form
> of numerous telephone calls within a short period of time, all relating

15

to a single objective, or they might be calls that are repeated over a long period of time, but still relating to a single objective or goal.

For example, a person might make various unwanted telephone calls, in-person harassing statements, derogatory social-media posts, false reports to the police, animal control, or CPS, and perhaps play practical jokes on the victim—all interspersed over a year or more— with the ultimate goal of publicly humiliating the victim, making that person lose her job, making her move, or literally driving her crazy. The telephone calls might be repeated only three or four times, but, coupled with the evidence of other types of harassment, they are sufficient to prove the person's scheme or plan and his intent to harass the victim.

*Wilson*, 448 S.W.3d at 429 (Cochran, J., joined by Johnson and Alcala, JJ., concurring). Although Wilson's multiple disparate acts were not similar to the telephone calls on their face, the calls were part of a common scheme or plan to harass. The circumstances surrounding the 2006 peace bond hearing showed Wilson's motive for turning on Bailey, and, in many of the incidents in which Wilson exhibited animosity toward Ballard, it was directed to some extent at Bailey as well. The evidence of Wilson's harassing conduct toward Bailey and Ballard also tends to prove intent.

Even if evidence is admissible under Rule 404(b), it may be inadmissible under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *see* TEX. R. EVID. 403. We accord the

16

trial court substantial discretion in balancing the Rule 403 factors, mindful that "the mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Montgomery*, 810 S.W.2d at 380.

Rule 403 favors admissibility of relevant evidence, and the presumption is that generally, relevant evidence will be more probative than unfairly prejudicial. *Id.* Unfair prejudice does not mean the evidence injures the opponent's case—"the central point of offering evidence." *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Although not limited to the following enumerated factors, courts should balance the following factors under a Rule 403 analysis: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005). The trial court is presumed to have conducted the proper balancing test if it overrules a 403 objection, regardless of whether it conducted the

17

test on the record. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

The evidence of Bailey's friendship with Wilson, and its ending—due, in substantial part, to Bailey's participation in the Ballards' peace bond hearing, coupled with evidence of Wilson's bad conduct toward Bailey for the years following the hearing—led to their interactions at the time Wilson made the telephone calls. After the peace bond hearing, Wilson perceived Bailey as being aligned with Ballard and against Wilson. As a result, this evidence is probative of Wilson's intent to harass Bailey.

We do not reach the question of whether the trial court erred in admitting the remaining extraneous-acts evidence—involving Wilson's conduct toward the HOA representative and his wife and in HOA meetings, the signs outside of her home, and her bad behavior toward other neighbors—because, even assuming it did, it did not affect her substantial rights. *See* TEX. R. APP. P. 44.2(b) (stating that non-constitutional error "that does not affect substantial rights must be disregarded."). The erroneous admission of evidence does not affect substantial rights "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 Tex. Crim. App. 2001), *quoted in Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Martinez v. State*, No. 01–10–00622–CR, 2011

18

WL 5026457, at *4 (Tex. App.—Houston Oct. 20, 2011, pet. ref'd) (mem. op., not designated for publication). In determining the extent to which the error influenced the jury, we consider the entire record, the nature of the evidence supporting the verdict, the character of the alleged error and its connection with other evidence in the case, and whether the State emphasized the error. *Motilla*, 78 S.W.3d at 355–56. The remaining extraneous-acts evidence was not highly inflammatory and did not take a substantial amount of time for the State to present, and was in many ways repetitive of the un-neighborly conduct that Wilson had engaged in toward Bailey and Ballard.

At Wilson's request, the trial court gave the jury a limiting instruction, informing the jurors about the purpose of the evidence and warning that they should not consider it for any purpose unless from the evidence presented it found beyond a reasonable doubt that Wilson had committed the extraneous acts. This instruction minimized the prejudice associated with the extraneous-acts evidence. *See Miller v. State,* 196 S.W.3d 256, 268 (Tex. App.—Fort Worth 2006, pet. ref d); *Simpson v. State*, 886 S.W.2d 449, 452 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Robinson v. State*, 701 S.W.2d 895, 899 (Tex. Crim. App. 1985) ("A proper instruction on the limited use of an extraneous offense will also lessen the prejudice."). We must presume that the jury followed the trial court's

instruction.  *See Gamez v. State*, 737 S. W.2d 315, 324 (Tex. Crim. App. 1987).
We thus reject Wilson's extraneous-offense evidentiary challenge.

### C. Exclusion of interview recording

Relying on the rule of optional completeness, Wilson proffered the audio recording of Officer Stevenson's interview with Nicole Bailey in connection with her cross-examination of the officer.  Wilson contends that the trial court erred in excluding the tape because it would have shown that Bailey was not as upset and traumatized by Wilson's actions closer in time to their occurrence as she seemed during her trial testimony.

The rule of optional completeness "is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007), *quoted in Peña v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). Wilson did not seek to impeach Bailey with the recording, and the State did not offer any part of the recording during Officer Stevenson's direct testimony. Stevenson testified that, during the interview, Bailey "exhibited an array of emotions from laughing to crying to telling me she is scared."  This is a reasonably accurate description of the recorded interview.  We hold that the trial court acted within its discretion in determining that the evidence presented by the State did not create a false impression that admission of the recording would have corrected.

## III.    First Amendment Challenges

In a supplemental brief after remand, Wilson brings both facial and as-applied First Amendment challenges to the telephone harassment statute, claiming that it is void for vagueness and overbreadth.[1]  Wilson acknowledges that, generally, a defendant may not raise a facial challenge based on constitutional vagueness or overbreadth for the first time on appeal.  *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).  Wilson did not raise her facial challenge in the trial court or in this court on direct appeal.  But, relying on an opinion dissenting from the denial of her motion for rehearing in the Court of Criminal Appeals, in which the dissenting justices raised the potential for constitutional infirmity in connection with the statute, she requests that we allow supplemental briefing on the issue on remand.  *See Wilson*, 448 S.W.3d at 430 (Alcala, J., joined by Johnson and Cochran, JJ., dissenting from denial of rehearing).

Generally, an appellant must raise an issue in her principal brief to have it reviewed on appeal.  *See* TEX. R. APP. P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).  If an issue is raised later in the appellate proceedings, Rule 38.7 provides that a "brief may be amended or

---

[1]    Wilson attempted to raise her First Amendment challenges in a motion for rehearing in the Court of Criminal Appeals.  A majority of the Court denied the motion without opinion.  *See Wilson v. State*, 448 S.W.3d 418, 430 (Tex. Crim. App. 2014) (denial of rehearing, followed by dissent from denial by Alcala, J., joined by Johnson and Cochran, JJ.).

supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." TEX. R. APP. P. 38.7. We therefore consider whether justice requires us to address the constitutional claims in Wilson's supplemental briefing even though she did not raise them until the case was on rehearing in the Court of Criminal Appeals. We conclude that well-established error preservation rules requiring that such complaints be made both in the trial court and in the initial briefing on appeal preclude our consideration of these arguments on remand.

## A.     Facial challenge

First, the Texas Court of Criminal Appeals has held that an appellant may not raise a facial challenge to the constitutionality of a statute for the first time on appeal. *Karenev*, 281 S.W.3d at 434. The Court of Criminal Appeals premised its holding in *Karenev* on the doctrine that "[s]tatutes are presumed to be constitutional until it is determined otherwise" and "[t]he State and the trial court should not be required to anticipate that a statute may later be held to be unconstitutional." *Id.*

Wilson concedes that she did not assert her facial First Amendment challenge in the trial court. But she contends that the rationale that *Karenev* applies to the State and the trial court should also apply to her—namely, that she should not be required to have anticipated that the Court of Criminal Appeals would re-interpret the telephone harassment statute in a way that arguably gives

22

rise to the constitutional infirmity that she asserts. She claims that, as a result of the Court's disavowal of its opinion in *Scott*, in which it had offered a definition for the statute's use of the term "repeated," it is now impossible to know what timing, frequency, and content of calls will make the caller subject to criminal prosecution.

But any constitutional infirmity would lie with the statute as written at the time of Wilson's offense, and the members of the high court disagreed as to the importance of the disavowed definition from *Scott,* with the majority concluding that it did not shed light on the statutory elements of criminal telephone harassment. *Compare Wilson*, 448 S.W.3d at 422 (majority opinion) (finding *Scott* "neither controlling nor persuasive" and describing its definition of "repeated" as ambiguous, inartful, and confusing) *with id.* at 427 (Cochran, J., joined by Johnson and Alcala, JJ., concurring) (taking issue with majority's rejection of discussion "repeated in *Scott*" and opining that majority's "new definition clearly invites a vagueness and overbreadth challenge to the statute").

Further, Wilson declined to advance a facial challenge to the telephone harassment statute's constitutionality in the trial court because, she contends, it would have been futile. Futility does not excuse the requirement that a party must raise a constitutional challenge to a statute in the trial court to preserve it for appellate review. *See Sanchez v. State*, 120 S.W.3d 359, 365–67 (Tex. Crim. App.

23

2003); *Schuster v. State*, 435 S.W.3d 362, 364–65 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Accordingly, we hold that Wilson waived her facial challenge and thus decline to consider it, because it was first raised in supplemental briefing on remand.

## B. As-applied challenge

Second, with respect to her as-applied challenge, Wilson could have presented her claim on direct appeal to this court. After the State presented its case in the trial court, Wilson moved to dismiss the charge against her, contending that the statute, as applied in the case against her, violated her First Amendment rights. The trial court denied the motion. Wilson did not address this preserved challenge in her principal brief to this Court. As a result, we have no basis for finding that justice requires consideration of this argument now and decline to consider it.

## Conclusion

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

24